## SPRINGFIELD FIRE & MARINE INS. CO. v. REPUBLIC INS. CO. (No. 9121.)

(Court of Civil Appeals of Texas. Dallas. May 10, 1924. Rehearing Denied June 7, 1924.)

**1. Insurance ☞389(2)—Insurer estopped to set up invalidity of fire policy because insured not sole owner of insured property.**

Insurer was estopped to set up requirement of fire policy that it should be void if insured was not sole owner of insured property, where insurer knew at time it issued policy that it was insuring whatever interest insured had as lessee in improvements attached to building owned by another.

**2. Insurance ☞282(12)—Fire policy requirement of true statement of insured's interest in property held sufficiently complied with.**

Requirement of fire policy of true statement of insured's interest in property insured was sufficiently complied with by statement that improvements were situated on leased land.

**3. Insurance ☞389(7)—Insured's failure to call for particulars of lease held not to deprive insured of full indemnity.**

In insurance of leased property, that particulars of lease were not called for by policy, or made subject of specific inquiry, could not be urged against insured's right to full indemnity after destruction of property.

**4. Insurance ☞146(1)—Rule of construction stated.**

The language of an insurance contract must be construed according to the parties' evident intent, to be derived from words used, subject-matter to which they relate, and matters naturally or usually incident thereto.

**5. Landlord and tenant ☞88(1)—Lease held to constitute one entire contract where renewal privilege exercised by lessee.**

Where original lease was for five years with lessee's right to renew for a like additional period on same terms and conditions, upon exercise of such privilege by lessee, lease and its renewal provisions constituted one entire contract for a term of ten years.

**6. Landlord and tenant ☞86(1)—Assignee held entitled to renew lease.**

Assignee of lease could exercise option to renew or extend term of lease contract as if it had been original lessee.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance** ⬳115(4)—**Assignee held to have insurable interest in improvements erected by him in leased property.**

Assignee of lease was entitled to protect by insurance improvements made in a building under a lease for five years, with an option to renew for another five years, which option had been exercised, since it was only at expiration of ten-year term that improvements would become property of lessor.

**8. Insurance** ⬳502—**Measure of recovery by lessee's assignee for destruction of improvements on leased premises stated.**

In the destruction of premises leased for theater purposes, true measure of damages, in order to indemnify lessee's assignee, the insured, was cost of replacing the improvements placed in leased building necessary to the conduct of the theater business.

**9. Stipulations** ⬳18(7)—**Insurer held estopped to raise question as to measure of damages on appeal.**

In an action on a fire policy, insurer could not raise question as to measure of damages on appeal, where, by admission, the loss was apportioned among the different insurance companies, if liable.

Error from Dallas County Court at Law; Frank G. Harmon, Judge.

Action by the Republic Insurance Company against the Springfield Fire & Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Paul M. O'Day and Locke & Locke, all of Dallas, for plaintiff in error.

Coke & Coke and T. G. Murname, all of Dallas, for defendant in error.

VAUGHAN, J. This suit was instituted on the 24th day of August, 1921, by defendant in error to recover on a policy of fire insurance issued by plaintiff in error to the Queen Theaters, Inc. As assignee of the Queen Theaters, Inc., the defendant in error held a four twenty-fifths interest in the contract of insurance involved. On an agreed statement of facts the judgment appealed from was by the court, without the aid of a jury, rendered for defendant in error for the sum of $503.30, the full amount sued for.

In June, 1912, one E. H. Hulsey, individually, leased the property at 1501–03 Elm street for a period of five years from August 1, 1912, to be occupied as a theater or for mercantile purposes, with an option of renewal for an additional period of five years upon the same terms and conditions except as to amount of rent, and that no privilege of renewal should be contained in the renewal term. Under this lease contract Hulsey agreed to pay his rent, $1,075 per month, to keep the property in repair, to deliver it at the expiration of the term in good order and condition, "natural wear and tear and damage by fire and the elements excepted."

Hulsey agreed to make certain improvements and additions to the structures, including the erection of a new front wall and the extension of the side walls to the rear property line, and the removal of the rear wall to that line or the erection of a new wall on that line; such improvements and additions to cost not less than $20,000. Hulsey also agreed, at the termination of the lease, on certain conditions, to pay the sum of $1,500 for the cost of restoring the second and third floors of the building, which Hulsey was authorized to remove in remodeling same during the term.

In addition, the lease contract contained the following provisions material to the disposition of this appeal:

"The premises hereby leased are now occupied by a three-story brick building used for mercantile purposes. It being the lessee's intention to use said premises wholly, or in part, for theater purposes, he is hereby given the right to entirely remodel the building now located on said leased premises for such purposes, but he shall not impair the integrity of the walls nor the roof in such remodeling. All permanent improvements made by the lessee to belong to the lessor at the expiration of the hereby granted lease. In case the walls or roof of the building on said premises, or any part thereof, shall be partially destroyed or damaged by fire, * * * so that the same shall thereby be rendered unfit for occupancy, then, and in such case, the rent reserved * * * shall be abated; * * * it being understood that the destruction by fire of such parts of said building as lessee erects and is to keep in repair shall in no wise affect the payment of rents hereunder. Except for the repairs of the main walls, should same be damaged by fire, * * * and except for repair of the roof when necessary, the lessor shall not be called upon to make any improvements upon the property here leased during the herein demised term. In case the walls or roof of the building on the said premises, or any part thereof, shall be partially destroyed or damaged by fire or by the elements, so that the same shall thereby be rendered unfit for use and occupancy, then, and in such case, the rent reserved, or a just proportionate part thereof, according to the nature and extent of the damage, shall be abated until the premises shall have been duly repaired and restored by the lessor or his heirs or assigns. In case, however, of the property being totally destroyed by fire or the elements, the lessee shall pay rent to the time of such destruction and then this lease shall come to an end, and, if any rent has been paid in advance, lessor or his heirs or assigns hereby agree to refund all rent paid beyond the date of such total destruction."

The improvements contemplated were made by E. H. Hulsey for the purpose of converting the building into a moving picture theater at an expense of approximately $47,000, in addition to the sum of $4,078 rents paid during the course of construction. On the 14th day of April, 1913, E. H. Hulsey executed a conveyance to Queen Theaters, Inc.,

wherein in consideration of $100,000 paid, he conveyed to said Queen Theaters, Inc., his leasehold interest in and to the property leased by him from said Edw. Gray, also all his then right, title, and interest in the Queen Theater situated on said leased premises and all furniture, fixtures, and paraphernalia of every kind then situated in said theater building and used in connection therewith. On the 14th day of April, 1913, and prior to the execution of the above conveyance, said E. H. Hulsey transferred and assigned unto the Queen Theaters, Inc., all his right, title, and interest in and to said lease contract, to which transfer Edw. Gray, the owner, consented as per proper indorsement made by him on said transfer.

On March 14, 1917, the lease was, by the lessor Gray and the Queen Theaters, Inc., duly extended under the renewal option for a period of five years from and after August 1, 1917, in all its terms and provisions. There never was any agreement between Edw. Gray, the owner of the building, Mr. Hulsey, or the Queen Theaters, Inc., that any insurance should be carried by Mr. Hulsey or the Queen Theaters, Inc., on the improvements erected by Hulsey, and Mr. Hulsey did not advise Gray of the fact that such insurance would be or was carried, and, so far as known to Hulsey, Gray did not know until after the fire, September 27, 1917, that any such insurance ever was carried by Hulsey or the Queen Theaters, Inc.,

On September 27, 1917, the date of the fire that gave rise to this litigation, the owner, Gray, had outstanding the following policies:

| Company. | Amount. |
| --- | --- |
| Republic Insurance Company | $ 4,000 00 |
| German Underwriters | 3,000 00 |
| New Hampshire | 2,500 00 |
| New York Underwriters | 2,500 00 |
| Phœnix Insurance Company of Hartford | 3,000 00 |
| Home Insurance Company | 10,000 00 |

insuring his interest as owner, aggregating $25,000; and there was outstanding the following policies procured by the Queen Theaters, Inc., to cover its interest in the improvements and betterments:

| | |
| --- | --- |
| Springfield Fire & Marine | $5,000 00 |
| National Union | 5,000 00 |
| National Fire | 5,000 00 |
| Ætna Fire Insurance Company | 2,500 00 |
| Delaware Underwriters | 2,500 00 |

aggregating $20,000, each of which was on Texas standard form and insured Queen Theaters, Inc., as follows:

"On improvements, parts, and betterments attached to the three-story and basement, brick, composition-roofed building, made by the assured as lessee, also including statuary, frescoes, fixtures, paintings (in case of loss no picture, painting, or statuary to be valued at exceeding cost), and ticket booth, all while contained in the above-described building, situated and known as Nos. 1501–1503 Elm street, in the city of Dallas, Tex."

The total damage done to the building, including the improvements and betterments erected by Hulsey, by fire amounted to $22,950.90. Of this sum, $12,582.65 represented the total damage done to said improvements and betterments.

On November 13, 1917, Queen Theaters, Inc., assigned all its interest in the policies on the improvements and betterments to Edw. Gray in consideration that said Gray had agreed to replace the improvements and fixtures placed upon said building by lessee damaged by said fire and covered by the policies issued to the Queen Theaters, Inc., which assignment included its interest in the policy involved.

On the 1st day of December, 1917, Edw. Gray assigned four twenty-fifths of his interest in said policies to the defendant in error, Republic Insurance Company. After the fire, in accordance with the terms of the agreement, which required Gray to rebuild in case the loss should not be total, provided also it should be sufficient to render the building unfit for occupancy. Gray did rebuild, not only the portion of the building destroyed by fire which he leased to Hulsey, but also the improvements and betterments made by Hulsey, without cost to the Queen Theaters, Inc., further than the transfer of said interest in the above policies.

As a basis for this appeal, the following propositions are advanced by plaintiff in error: (1) The policy in suit contained provisions whereby it was rendered void if the interest of the plaintiff, in the subject of insurance, be other than unconditional and sole ownership. (2) The effect of the provision referred to in the preceding proposition is that the policy is void because at the time of the issuance of the policy the plaintiff's interest in the building was not the sole and unconditional ownership thereof. (3) The basis of a contract of insurance is indemnity. Any interpretation of a contract of insurance which allows a possible gain to the insured by the happening of the event upon which the liability of the insurer becomes fixed is contrary to the fundamental nature of insurance and will not be allowed. (4) Queen Theaters, Inc., under the terms of the lease with Edw. H. Gray, was under no obligation to pay rent, provided the fire was of such a nature as to render the premises unfit for use and accupancy; it was the duty of the lessor, in case the fire did render the premises unfit for use and occupancy (and in the absence of total destruction), to repair and restore the same. (5) Because the fire rendered the premises unfit for use and occupancy and because the destruction of the premises was not total, the lessor, Edw. H. Gray, was under obligation to, and did, restore the insured premises without any cost to the Queen Theaters, Inc.; not one cent of loss was suffered by the Queen Theaters; therefore neither it nor

its assigns are entitled to any indemnity.

(6) The measure of loss or damage suffered by the lessee of a building is the difference between the value of the use of the premises and the actual rent.

[1] Plaintiff in error, as shown by the terms of its policy, knew at the time it issued its policy that it was insuring whatever interest Queen Theaters, Inc., had as lessee in improvements, parts, and betterments attached to a building owned by another, and therefore subject to the terms of any lease in existence as well as to the general principle of the law of fixtures wherein parts and betterments attached to realty become a part thereof. The language, "on improvements, parts, and betterments attached to the three-story and basement, brick, composition-roofed building, made by the assured as lessee," shows plainly that there was no concealment by Queen Theaters, Inc., of the nature of its interest in the property for which it sought to be indemnified against loss by reason of the destruction of same by fire. The quantum of the risk assumed by plaintiff in error appeared clearly therefrom to have been to indemnify the assured against loss by fire of the improvements, parts, and betterments attached to a building owned by another, which improvements, etc., had been attached thereto by the assured as lessee, clearly indicating that the assured was not asserting absolute ownership in the property but a financial interest therein, measured by the value of said improvements used in connection with the building by assured, for which said building had been leased and said improvements and betterments made, viz. for theater purposes.

Therefore plaintiff in error is estopped to set up that portion of its printed policy providing that same should be void if the assured was not the sole and unconditional owner of the insured property, same being inconsistent with the nature of the insurance sought and in reference to which plaintiff in error was fully advised; for, as well said in the case of Mass. Bonding & Ins. Co. v. Tex. Finance Corp. (Tex. Civ. App.) 258 S. W. 250:

"Appellant knew this was the sole purpose of appellee's purchase of the insurance. With full knowledge in this respect, it issued its indemnity bond with the indorsement thereon showing the character of business in which appellee was engaged, and undertook to give it the insurance desired. * * * The contention of appellant * * * can only be maintained on the assumption that, knowing the purpose for which appellee purchased the insurance, it delivered to appellee its bond and certificates which failed of this purpose; and that appellee knowingly contracted itself out of court in any suit for indemnity for loss from the very acts of the parties [against which] it is here complaining."

[2, 3] The statement that the improvements were situated on leased land was a suf-

ficient compliance with the provisions of the policy that required a true statement of the interest of the assured in the property to be made. This language of the policy called special attention to the character and extent of the interest of the assured in reference to which it sought and obtained the issuance of the policy to indemnify it against such interest. This statement clearly implied that whatever interest assured had in the property was subject to the terms of a lease. That the particulars of the lease were not called for in the policy or made the subject of specific inquiry is not an omission that can now be urged to militate against the right of assured to the full measure of indemnity that the policy on its face secured. Fowle v. Springfield Ins. Co., 122 Mass. 191, 23 Am. Rep. 310; Security Ins. Co. v. Sellers et al. (Tex. Civ. App.) 235 S. W. 619; Va. Fire Ins. Co. v. Cummins (Tex. Civ. App.) 78 S. W. 716.

[4] This conclusion is in harmony with, and justified by, the rule of construction so often resorted to in cases of this character. The language used must be construed according to the evident intent of the parties to be derived from the words used, the subject-matter to which they relate, and the matters naturally or usually incident thereto. Wood on Fire Insurance, §§ 182–187; Whitney v. Ins. Co., 72 N. Y. 117, 28 Am. Rep. 116.

[5] The original lease was for a period of five years from August 1, 1912, with the right of lessee to renew for an additional period of five years upon the same terms and conditions at a specified rental. This renewal privilege was exercised and completed by lessee. From this and other provisions of the lease herein quoted, we hold that the lease and its renewal provisions constituted one entire contract for a term of ten years, five years certain, with an additional five years to be made certain upon exercise by lessee of its renewal privilege, and that throughout the entire period of ten years all the terms and provisions of the contract remained intact and unchanged. Neal v. Harris et al., 140 Ark. 619, 216 S. W. 6, in which it is held:

"Where, instead of a covenant in a lease for renewal, there is provision for extension of the term at the lessee's option, on exercise of the option by the lessee, there is granted a present lease for the full term to which it may be extended, and not a lease for the lesser period, with a privilege of new lease for the extended term."

In the present case no new contract was provided for in the lease itself. The extended term of the lease under consideration was fixed by and was a part of the original lease. When the lessee exercised its option and gave the required notice, the parties were bound for the five additional years. 2 Underhill on Landlord and Tenant, par.

803; Hopkins v. McCarthy, 121 Me. 27, 115 Atl. 513; Kahn v Am. Stores Co., 94 N. J. Law, 367, 110 Atl. 562; Hill et al. v. Brown (Tex. Civ. App.) 225 S. W. 784.

In the latter case the court holds:

"It is therefore held that if the lessee has the privilege of an extension, and holds over upon giving notice that he intends to exercise the privilege, he holds for the additional term under the original lease, and not under the notice."

[6] The Queen Theaters, Inc., by the conveyance and the assignment of the leasehold interest executed by Hulsey, became subrogated and succeeded to all the rights of Hulsey in the lease contract and was entitled to all of the rights and benefits secured by its provisions to Hulsey, as well as subject to all of the burdens required by said lease contract to be performed by Hulsey. Therefore Queen Theaters, Inc., had the right to exercise the option to renew or extend the term of said lease 'contract as if it had been the original lessee therein.

[7] We therefore hold that, after the exercise by Queen Theaters, Inc as lessee of the option to renew or extend the present lease, the entire lease became one for a term of ten years, and that it could only have been at the expiration of the ten-year term that the "permanent improvements made by lessee" could have become the unqualified property of lessor, and that therefore, throughout the entire-ten-year term, so long as "lessee" faithfully kept the balance of its covenants, it alone had the ownership of its fixtures and betterments, so that it would suffer an actual property loss by their destruction by fire, and this ownership it was entitled to protect by insurance. In the same way, throughout the entire period of ten years, it was distinctly understood that "destruction by fire or otherwise of such parts of said building as lessee erects and is to keep in repair" should in no wise affect the payment of rent due by lessee; also, throughout the entire ten-year period, "except for the repairs of the main walls, should same be damaged by fire," lessee could not be called upon to make any improvements upon the property.

It is readily apparent that lessor Gray had no interest in the parts and betterments involved in this litigation and expressly relieved himself from any responsibility for same, or their replacement, as shown by two distinct provisions of the lease plainly providing that his sole duty should be to replace the walls and roof in event of fire, and that the destruction by fire of such parts as lessee was to erect should in no wise abate the payment of rent.

In view of the fact that, in keeping with the purpose for which this property was leased, these parts and betterments were only adaptable to the conduct of a moving picture theater, Gray's reasons for these provisions are perfectly obvious. After the fire Gray could have restored the walls and roof and called upon Queen Theaters, Inc., for the payment of rent as provided by the lease, and if it had wished to continue the operation of its theater, being the purpose for which said property was primarily leased, it would have been forced to restore the theater fixtures. As is revealed by the uncontradicted evidence, such was the situation and the very difficulty that developed after the fire leading up to the settlement of the matter in the very form in which it comes before this court. The Queen Theaters, Inc., after the fire, faced an actual loss by reason of the fact that the landlord was obligated only to restore the walls and roof, and the theater company, to avail itself of its lease and reopen its theater, would have been required to replace the theater fixtures at its own expense. Such a loss was not in any wise covered by the policies held by Gray, because at the time of the fire his sole interest as owner was in the four walls and roof.

Phœnix Ins. Co. v. Shulman Co., 125 Va. 281, 99 S. E. 602, in which the court held that—

"Lessee would have an insurable interest in improvements made by it at its own expense, though lease obligated lessor. in case of partial destruction. to restore premises, since lessor in such case would be bound to repair only to the extent of restoring the premises to the condition in which they were when lease was executed and before lessee made improvements in question. * * * It was further provided in such lease that the work of installing said improvements should be commenced by January 1, 1915, be completed as soon thereafter as practicable, and when completed were to become the property of the landlord; * * * the original cost of said improvements borne and paid by the assured was the sum of $12,-024.17. * * * It is claimed by the insurance company that, under the provisions of the lease * * * the assured had no insurable interest in the improvements aforesaid, for the reason that in case of partial destruction of the premises by fire * * * the landlord, as provided in the lease was obligated to restore the premises. * * * We may conclude that as between the landlord and the assured the destruction of the leased premises by fire was only partial, and yet the correctness of said position would depend upon the determination as to what condition the landlord was obligated by the lease to restore the premises in such case. * * * But, if it be conceded that if the premises were not totally destroyed, there was an obligation upon the landlord to repair, such obligation would go to the extent of restoration of the premises only to the condition they were in when the lease was executed. * * * This was the extent of the landlord's obligation. Were the landlord to discharge that obligation, that would not restore the improvements which were the subject of the insurance, but a different class of improvements. The assured would be still left wholly without the class of such improvements which

were put in at its expense. * * * To again obtain the better class of improvements aforesaid the assured would have to put them in at its own expense as it did originally. * * * If the leased premises * · * * had been totally destroyed by the fire without fault of the lessor, * * * there was under said lease no obligation on the landlord to restore the premises. Hence whether the destruction of the leased premises was total or partial the assured had an insurable interest at the time of the fire in the subject of the insurance."

[8] We adopt the reasoning in the above case as being applicable in every respect to the instant case, and hold that the true measure of damage, in order to indemnify the assured, was the cost of replacing the parts and betterments placed by the Queen Theaters, Inc., in the leased building necessary to the conduct of the theater business and covered by plaintiff in error's policy.

It follows as a natural sequence that as the Queen Theaters, Inc., had a valid demand against plaintiff in error, defendant in error, as the assignee of four twenty-fifths of that demand, is entitled to recover its proper proportionate part of the amount in which said theater company was entitled to be indemnified. As stated, this case was tried upon an agreed statement of facts, whereby, among other things, it was provided: Estimates made as to amount of damage and cost of restoration establish that, out of the total loss of $22,950.90, $10,368.25 fell upon the companies carrying Gray's interest as owner, while $12,582.65 fell upon plaintiff in error and its companion companies carrying the theater company's interest in the theater parts and betterments which had been placed upon the premises under the lease of E. H. Hulsey.

The following admission was also contained in the agreed statement of facts:

"That without admitting liability upon the part of the insurers, and subject to the legal questions involved in the suit, the amount of said sum of $12,582.65, loss on improvements and betterments, would be apportionable between the companies hereinbefore shown as issuing policies to Queen Theaters, Inc., covering improvements and betterments in the following manner:

| Company. | Policy. | Amt. of Policy. | Proportionate Amt. |
|---|---|---|---|
| Springfield Fire & Marine | 12461 | $5,000.00 | $3,145.66 |

"(Apportionment as to other companies omitted.)"

[9] Therefore we hold that plaintiff in error is not in position to raise the question of the measure of damages. The amount for which the judgment was rendered, to wit, $503.30, was the amount payable by plaintiff in error under the above apportionment, and as defendant in error, for a valuable consideration, held an assignment for four twenty-fifths of the amount payable by plaintiff in error under said apportionment, the judgment rendered in favor of defendant in error was correct.

Therefore said judgment should be in all things affirmed; and it is so ordered.

Affirmed.