H. A. MANNING et al., Appellants,

v.

W. O. BARNARD et ux., Appellees.

No. 14893.

Court of Civil Appeals of Texas.

Dallas.

Feb. 11, 1955.

Rehearing Denied March 25, 1955.

Corenbleth & Jaffe, Dallas, for appellants.

Virgil R. Sanders, Jr., Bowyer, Gray, Thomas, Crozier & Harris and W. W. Sweet, Jr., Dallas, for appellees.

DIXON, Chief Justice.

Appellees W. O. Barnard and Gladys Barnard, real estate dealers, sued appellants Manning and Williams for real estate commissions. After a trial before the court without a jury judgment was rendered for appellees for $1,800.

Appellees' suit as alleged in their first amended petition, sworn to according to best knowledge and belief, is based on a written contract as follows:

"Barnard Realty Company
"Farms City Property Ranches
"Office—7026 Military Parkway—
Urbandale
Dallas 17, Texas     January 17, 1950

"This is to certify that Mr. H. A. Manning and Bill Williams are making the Barnard Realty Company the exclusive sales agent to sell the houses to be built in the Coalson Addition in Oak Cliff with a sales commission of $100.00 per house.

"Barnard has agreed to set the addition up with the Loan Company, the City of Dallas, and the Veterans Administration, and get it approved. This is to be done without brokerage charge to builder.

"It is further agreed that the Barnard Realty Company is to secure all purchasers and to close all sales at the Title Company. /s/ H. Manning /s/ R. Williams /s/ W. O. Barnard."

Appellants' first amended answer, also sworn to according to best knowledge and belief, contains a general denial followed by this allegation: "Further answering, defendants would show that the contract set up in paragraph 3 of said petition was executed by the parties therein alleged and was partially performed in that plaintiffs sold 41 of the houses and were paid the amount provided for under said contract."

In our opinion, the record in this case raises no issue as to the execution of the above contract in the form alleged by appellees, for the reason that any such supposed issue is settled by the pleadings. Our Supreme Court has said: "The decisions of the Supreme Court are conclusive that there is no need to prove a fact admitted in pleadings of all parties." Lafield v. Maryland Cas. Co., 119 Tex. 466, 33 S.W. 2d 187, 189. See also Texas Employers Ins. Ass'n v. Ferguson, Tex.Civ.App., 196 S.W.2d 677; Humble Oil & Refining Co. v. Webb, Tex.Civ.App., 177 S.W.2d 218; Newsom v. Fikes, Tex.Civ.App., 153 S.W. 2d 962; Blair v. Blair, Tex.Civ.App., 105 S.W.2d 331; and McCormick and Ray, Texas Law of Evidence, sec. 299, p. 640.

Further, no issue was presented in the trial court as to whether appellants signed the written contract in the form alleged by appellees in their petition. That was not the theory of appellants' defense. Such being the case we cannot consider it for the first time on appeal. Red River Valley Publishing Co. v. Bridges, Tex.Civ. App., 254 S.W.2d 854; Childers v. Texas & N. O. Ry. Co., Tex.Civ.App., 89 S.W.2d 478.

Appellants say that their general denial put in issue the question of the execution by them of the contract pled by appellees, notwithstanding their later allegations that they did execute the instrument. In support of this assertion we are cited among others two Supreme Court cases: Bauman v. Chambers, 91 Tex. 108, 41 S.W. 471, and Silliman v. Gano, 90 Tex. 637, 39 S.W. 559.

Under the facts presented in this case the holdings in the two cases above referred to are not applicable. This is a suit on a written contract, and under Rule

93(h), V.R.C.P., its execution is admitted unless expressly denied under oath. A general denial is not sufficient to meet the requirements of the rule. Howell v. Knox, Tex.Civ.App., 211 S.W.2d 324; McDonald's Texas Civil Practice, sec. 729, Vol. 2, p. 664.[1]

The record discloses that after the execution of the written contract, appellants built three groups of houses. First, there were 41 houses built which were all sold and on the sales commissions were paid to appellees prior to January 1952. Appellees had secured loans without brokerage on these houses. Second, there were 29 houses built during the early part of 1952. After some delay, which will hereinafter be discussed, the loans on these houses were also placed without brokerage being charged. Third, 23 houses were later built by appellants. A loan brokerage was paid on all of these 23 houses except one. This lawsuit involves only the 30 houses on which no loan brokerage was charged.

The financing of the houses was arranged through Southern Trust & Mortgage Company, a mortgage investment firm, who placed the loans with various clients without requiring appellants to pay any brokerage or discount. This was possible only because the United States Government had appropriated and made available through the Federal National Mortgage Association money with which to guarantee the loans of the type here involved. This money, was known in financial and home building circles as "Fannie Mae" money.

In the latter part of 1951 trouble arose. The "Fannie Mae" money had all been expended and additional money had not been appropriated by Congress. As a result Southern Trust & Mortgage Company could no longer place purchasers' loans without a brokerage charge being assessed. Appellants and appellees conferred about the situation. There is some conflict in their testimony as to what was said and done about the problem. Appellees testified that it was agreed that they should proceed to sell the 29 houses then under construction, hoping that Congress would appropriate additional funds, thus again making "Fannie Mae" money available. In the event no such additional appropriation should be made and appellants had to pay a brokerage or discount charge in placing purchasers' mortgages, appellees were not to be paid any real estate commission for selling the houses.

Meantime appellants made arrangements for temporary financing of their operations by "warehousing" purchasers' mortgages as houses were sold. This consisted of pledging such real estate mortgages with the Dallas National Bank to secure a loan made by the Bank to appellants, there being at the time no market available for the sale of the mortgages. Eventually Congress appropriated additional funds and "Fannie Mae" money again became available. It thereupon became possible to sell, and appellants did sell the accumulated mortgages without paying a brokerage charge. But they had paid the Dallas National Bank a considerable sum as interest on the money borrowed from the Bank during the interim.

The sales involved in this controversy were negotiated by E. E. Story, who for

---

**1.** The question first arose when it was noticed that the written contract as copied into the statement of facts did not include the heading: "Phone T—1650. Barnard Realty Company Farms City Property Ranches Office—7026 Military Parkway—Urbandale Dallas 17, Texas."

This was brought to the attention of counsel for both sides in an informal hearing before the Court of Civil Appeals. It was there disclosed, and it was not contradicted, that the written contract consisted of three copies, all signed by the parties. The first copy was written on the letterhead of appellees and included the above heading. The other two copies were carbon copies on yellow second sheets, which did not include the printed data shown on the letterhead. It was one of the signed yellow carbon copies which was introduced in evidence at the trial.

The court invited both parties to file, and they did file, supplemental briefs setting forth their views as to the legal significance of the situation presented by the official record.

some years had been a real estate agent in the employ of appellees. Most of his sales activities had been conducted from a small temporary structure used as a sales office located on one of the lots in the Addition. Some time during the period when "Fannie Mae" money was not available Story seems to have made an agreement whereby he entered the employ of appellants. He continued to sell houses in the Addition, being paid by appellants $40 commission for each house sold. Appellees testified that they were not aware of Story's switch in employers until in September 1952 when "Fannie Mae" money again became available and they learned for the first time that appellants did not intend to pay them a commission on the houses sold.

Appellants advance the following points on appeal: (1) Insufficient description of land; (2) breach of contract by appellees in that they were unable to secure loans without brokerage; (3) reliance by appellees on new oral contract which was within statute of frauds; (4) cancellation of contract by mutual agreement; and (5) failure of court to file additional findings of fact.

■ The vexing question of the sufficiency of real estate description has often been passed on by our courts. The general rule is this: The writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land may be identified with reasonable certainty. Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150, 152.

It is in the application of the rule that the contrariety of opinions has arisen. We believe the description in the written agreement in this case is sufficient. The name by which the property was known at the time is given in the document: "Coalson Addition in Oak Cliff." It is undisputed that appellants owned Coalson Addition in Oak Cliff. It is undisputed also that appellees obtained approval by the City of Dallas of a replat of the Addition, by which action they "set up" the Addition with the City of Dallas, as the written contract obligated them to do. The Addition was then renamed Veterans Addition. The new plat

was filed with the City of Dallas. The heading of the written contract contains the words "Dallas, Texas." It is admitted that 41 houses had been sold by appellees under the contract and appellees had received their commission.

■ We quote from the opinion in Wilson v. Fisher, supra: "* * * The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. * * * As we interpret these cases (Fulton v. Robinson, 55 Tex. 401, and Morrison v. Dailey, Tex., 6 S.W. 426), however, they do little violence, if any, to the above announced rules. The reference to the grantor's 'headright' in the Fulton case furnished the means by which the identity of the land might be made certain. 29 C.J. 238; 39 C.J.S., Headright, p. 807. The receipt in the Morrison case designated the owner of the property and specified it as a particular named tract. *No reference, however, was made to the amount of the land or the county or state of its location, nor was any key thereto furnished except such as might arise from the reference to the particular tract.* The court said that was sufficient since it might be determined with certainty what land the grantor owned which was known as the 'James Perry Tract.' The authorities of many states from an early date have held that a description of land by the particular name by which it is known in the locality is sufficient. 25 R.C.L. 654, sec. 285; 27 C.J. 272, § 323; Frauds, Statute of, § 186; 18 C.J. 181, § 63; 26 C.J.S., Deeds, § 30." (Emphasis and parenthesis supplied.) We also invite attention to these cases: Fulton v. Robinson, 55 Tex. 401; Morrison v. Dailey, Tex., 6 S.W. 426; Pickett v. Bishop, 148 Tex. 207, 223 S.W.2d 222; Dickson v. Kelley, Tex.Civ.App., 193 S.W.2d 256; Jones v. Smith, Tex.Civ.App., 231 S.W.2d 1003. We think that the words "Dallas, Texas" in the heading of the instrument, together with the express provision that "Barnard has agreed to set up the Addition with * * *, The City of Dallas" may be looked to as an aid in locating the property. Loring v. Peacock, Tex.Civ.App., 236 S.W.2d

876; Krueger v. W. K. Ewing Co., Tex. Civ.App., 139 S.W.2d 836; Sorsby v. Thom, Tex.Civ.App., 122 S.W.2d 275; Taylor v. Lester, Tex.Civ.App., 12 S.W.2d 1097.

The trial court filed findings of fact and conclusions of law. Findings Nos. 13 and 15 are as follows: "(13) That plaintiffs and defendants had an understanding in January, 1952 whereby it was decided by plaintiffs and defendants that if 'Fannie Mae' money played out that the final closing of sales would be held in abeyance until new 'Fannie Mae' funds were made available, so that such sales could be closed without brokerage commission." "(15) Plaintiffs performed under the contract or were ready, willing and able to perform within a reasonable length of time."

■ We think there is sufficient testimony in the record, especially that of appellees themselves, to sustain the above findings. It is undisputed that the sales of the 30 houses in question were eventually financed without the necessity of appellants paying brokerage. The contract itself contains no time limit. These facts together with the court's findings negative appellants' contention that the undisputed facts show appellees breached the contract in that they were unable to secure loans without brokerage. Appellants' second point is overruled.

■ We do not believe that the oral agreement testified to by the Barnards constituted a new verbal contract which violated the Statute of Frauds. At most it represents merely a change in the medium or manner of payment. The written contract contained no time limit so a reasonable time for performance will be presumed or implied. There is testimony that the parties agreed to postpone the placing of the loans in the hope that "Fannie Mae" money would again become available. This is not inconsistent with the terms of the written agreement, since it was silent as to a time limit.

There is also testimony that the parties agreed that if the loans were eventually handled without brokerage appellees would

be paid their commissions, otherwise they would not be paid anything. But such agreement, far from being a new verbal contract, is really no more than a restatement of the terms of the written contract.

■ In any event, we think the oral agreement which the parties entered into comes within these rules as stated by our Supreme Court: "(1) That the parties to a contract, grant, or option may lawfully change the medium of payment, and waive strict performance of the method of payment, without violating the Statute of Frauds. * * * (3) That the strict performance of a contract which is required to be in writing may be waived, or its terms extended, by oral agreement. * * *" Gulf Production Co. v. Continental Oil Co., 139 Tex. 183, 164 S.W.2d 488, 491. We overrule appellants' third point.

■ The trial court's findings of fact Nos. 10, 11 and 12 were as follows: "(10) Plaintiffs were at all times ready, willing and able to show the houses * * * and to procure purchasers. (11) That plaintiffs did not advise defendants they were abandoning their contract with defendants on or about April 1, 1952 or at any other time. (12) That plaintiffs and defendants did not mutually cancel and rescind the contract of January 17, 1950, on or about April 1, 1952 or at any other time." The testimony with reference to the above findings is conflicting. That of the appellees and the witness Yvonne Newman is sufficient to support the findings; that of appellants is to the contrary. This being a trial without a jury the trial court's findings are binding on this Court if supported by evidence of probative force. 17 Tex.Jur. 889. We overrule appellants' fourth point in which appellants assert that the written contract was cancelled by mutual agreement.

■ Appellants requested the trial court to file additional findings of fact, but the court did not do so. The findings and conclusions filed by the court consist of 15 paragraphs and 5 paragraphs respectively, which in our opinion cover the

issues raised in the case. We do not believe that appellants were injured by the court's failure to file additional findings and conclusions, hence such failure is not reversible error. Wagner v. Riske, 142 Tex. 337, 178 S.W.2d 117. Appellants' fifth point is overruled.

Appellees have cross assigned error and have presented a counterpoint because the trial court failed to render judgment in their favor for $3,000. The court in arriving at $1,800 as the amount of appellees' judgment apparently deducted the sum of $40 per house, a total of $1,200, which was the amount appellants paid E. E. Story for selling the houses. It is undisputed that this was the exact commission which appellees had agreed to pay Story for his services as their subagent for selling the houses. In our opinion appellees have not suffered any actual injury by reason of the court's method of computing their damages. We overrule appellees' counterpoint.

The judgment is affirmed.