Fred **ARRINGTON**, Appellant,

v.

Curtis **LOVELESS**, Appellee.

No. 17345.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 27, 1972.

Robert H. Caldwell, Jr., Denton, for appellant.

R. William Wood, Denton, for appellee.

## OPINION

BREWSTER, Justice.

This is a suit to recover rentals allegedly due to the landowner from the tenant under a written lease agreement. The landowner, Curtis Loveless, was awarded a judgment in the trial court for unpaid rentals and the tenant, Fred Arrington, has appealed.

The trial was non-jury and no findings of fact and conclusions of law were filed by the trial court.

The defense alleged by defendant to plaintiff's suit was: that the parties had mutually agreed to a surrender of the lease as of August 31, 1971, or, in the alternative, that the facts in the case are such as to have resulted in a surrender of the lease by operation of law as of that date, which date was prior to the time the rentals sued for accrued.

The defendant urges five points of error on this appeal. The first such point is in substance to. the effect that because of plaintiff's omission to introduce into evidence the lease contract involved that this left the record without any competent evidence to support any presumed findings by the court of an obligation on the part of the defendant to pay rent after he gave up possession of the premises.

We overrule that point because admissions contained in defendant's answer did away with the need for plaintiff to prove up the terms of the lease. In view of such admissions the execution of the lease and its terms were as fully established as they could ever have been by proof offered by plaintiff.

Plaintiff's pleading, Paragraph II alleged the following: "That on or about November 18, 1970, Plaintiff and Defendant entered into a written agreement of lease whereby Plaintiff agreed to lease to Defendant a brick store building located at 1220 West Hickory, Denton, Texas. Said agreement of lease is attached hereto and

marked 'Exhibit "A"' and is for all purposes intended to be incorporated herein."

Paragraph III of said pleading alleged in substance that under the terms of the lease defendant agreed to pay plaintiff $4800.00 in rentals at the rate of $200.00 per month on the first day of each month starting December 1, 1970. The lease was actually marked "Exhibit 'A'" and attached to plaintiff's petition, which was filed as a pleading in the case.

Defendant's amended answer, Paragraph No. I, alleges: "Defendant admits the allegations contained in Paragraphs II and III of Plaintiff's Original Petition."

During the trial the lease was not marked as an exhibit and was not introduced into evidence.

In view of the admissions above referred to that are contained in defendant's answer it was unnecessary upon the trial to offer proof as to the execution of or as to the terms of the lease.

On this point see 45 Tex.Jur.2d 526, Pleadings, Sec. 86, wherein it is said: ". . . a party need not allege or prove facts that are pleaded and admitted by his adversary. . . ." See also Manning v. Barnard, 277 S.W.2d 160 (Dallas, Tex. Civ.App., 1955, ref., n. r. e.).

■ It was not even necessary in order to get the benefit of those admissions to introduce defendant's pleading into evidence. On this see 45 Tex.Jur.2d 526, Pleading, Sec. 86, for the following: "Since the office of pleadings is to define the issues to be tried, and since pleadings are matter of record as distinguished from matter of evidence, an adversary's pleadings are not required to be introduced in evidence in order to obtain the benefit of any admissions therein."

Defendant contends in his points of error Nos. 2 through 5, inclusive, that the undisputed evidence in the case shows: (1) that the lease was surrendered by operation of law; (2) that the parties mutually agreed to a surrender of the lease, and (3) that plaintiff is estopped from suing to collect the rentals that are here involved.

We overrule all of those points.

■ A surrender of a lease, as that term is used in the law of landlord and tenant, is the yielding up by the tenant of the leasehold estate to the landlord so that the leasehold estate comes to an end by the mutual agreement of the landlord and tenant. 51C C.J.S. Landlord and Tenant § 120, p. 388; and 36 Tex.Jur.2d 113, Landlord and Tenant, Sec. 260. For a surrender to occur the lessor and lessee must have a meeting of the minds and must mutually agree that there be a surrender of the lease. 36 Tex.Jur.2d 113, Landlord and Tenant, Sec. 260; Stewart v. Basey, 241 S.W.2d 353 (Austin, Tex.Civ.App., 1951, affirmed in 150 Tex. 666, 245 S.W.2d 484 (1952)); and Barret v. Heartfield, 140 S. W.2d 942 (Beaumont, Tex.Civ.App., 1940, error ref.).

■ Proof that the parties had mutually agreed to a surrender of the lease would be a defense to a suit to recover rentals that allegedly accrued after the surrender occurred. Patteson v. McGee, 350 S.W.2d 241 (Eastland, Tex.Civ.App., 1961, no writ hist.).

■ The law is that in a case such as this the burden of both pleading and of proving by a preponderance of the evidence that a surrender of the lease did occur is upon the lessee who is trying to avoid paying the rentals which he agreed in the lease to pay. Smith v. Irwin, 289 S.W. 113 (El Paso, Tex.Civ.App., 1926, no writ hist.); and Stewart v. Kuskin & Rotberg, 106 S.W.2d 1074 (Texarkana, Tex. Civ.App., 1937, no writ hist.).

In Stewart v. Basey, 241 S.W.2d 353 (Austin, Tex.Civ.App., 1951, affirmed in 150 Tex. 666, 245 S.W.2d 484 (1952)), the court said at page 358 the following:

"In order for there to be a termination of a lease contract or a surrender thereof,

it must be by the mutual agreement of the lessor and the lessee,—that is there must be a meeting of the minds. Barret v. Heartfield, supra; Early v. Isaacson, Tex. Civ.App., 31 S.W.2d 515, Er.Ref.; 27 Tex.Jur., p. 312, Sec. 183. Upon conflicting evidence this was an issue for the trier of the facts. Barret v. Heartfield, supra; Marathon Oil Co. v. Rone, supra, [Tex. Civ.App., 83 S.W.2d 1028]; Cannon v. Freyermuth, Tex.Civ.App., 4 S.W.2d 84, with the burden on appellee to introduce evidence showing appellants accepted the surrender of the premises with the intention to release appellee from further liability under the contract. Walton v. Steffens, Tex.Civ.App., 170 S.W.2d 534, Er. Ref.W.M.; Drollinger v. Holliday, Tex. Civ.App., 117 S.W.2d 562; Miller v. Compton, Tex.Civ.App., 185 S.W.2d 754."

■ Many other cases hold that whether there has in fact been such an acceptance by the lessor of a surrender of the leasehold by the tenant as to release the tenant from further obligations to pay rent under the lease involves a determination of the intention of the parties. Patteson v. McGee, supra; Walton v. Steffens, 170 S.W. 2d 534 (El Paso, Tex.Civ.App., 1942, ref., want of merit); Early v. Isaacson, 31 S. W.2d 515 (Amarillo, Tex.Civ.App., 1930, writ ref.); article entitled "The Element of Intent in Surrender by Operation of Law", 38 Harvard Law Review 64; and 51C C.J.S. Landlord and Tenant § 124, footnotes 75 through 78, p. 394.

■ The question of what the parties intended is of prime importance in determining what they agreed to and in determining whether they mutually agreed that there be a surrender of the lease. The cases herein above cited are authority for this statement.

There is no contention here that there was an express agreement of the parties to effect a surrender of the lease.

■ If the evidence on the issue of surrender did no more than create a fact issue, then we are required to affirm the judgment because, since there are no findings of fact or conclusions of law, we must presume that the trial court found the issue of surrender against defendant and in favor of the judgment. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950), and for many other cases so holding see Note 26 under Rule 296, Vernon's Texas Rules of Civil Procedure.

The plaintiff and the defendant were the only witnesses that testified.

The substance of the evidence in the case and the admissions in the pleadings showed the following: By written lease the plaintiff leased to defendant the premises involved for a two year term beginning December 1, 1970, and ending November 30, 1972, for a total rental of $4800.00 which was to be payable $200.00 on December 1, 1970 and $200.00 on the first day of each succeeding month during the term of the lease; in June, 1971, plaintiff was advised by his mother that she had heard that defendant was going to move from the premises; plaintiff then went by to talk to defendant about it and was advised that defendant had bought from the City of Denton an old firehall and that he did plan to remodel it and move his cleaning and pressing business into it but did not know just when he would do so, but that it would likely be within the next two months; plaintiff told defendant that the leased building, being around a college, was easier to rent in the summer months so the tenant could have a full year to sell to college students and that if he was going to have to look for a new tenant that he would like to start looking before the school year started around the end of August, for *otherwise the building could be vacant for a long time and the defendant would be liable for the rent*; the lease provided that the tenant could not assign or sublet the premises without the written consent of the landlord; plaintiff and defendant both agreed that they would start looking for some one to occupy the building and that both would put up a "for

rent" sign; when some one would inquire about the building of defendant he would send them to the plaintiff to talk; they both knew one George Sharpe and defendant asked plaintiff if he would agree to rent the place to Sharpe and plaintiff agreed to do so; defendant then sent Sharpe to see plaintiff who entered into a written lease of the property with Sharpe for one year at $200.00 per month; the lease was in writing, but was not offered into evidence; this lease that plaintiff signed with Sharpe was dated August 15, 1971, but was not to start until September 1, 1971; defendant consented to let Sharpe into the building, gave him a key, and in the middle of August Sharpe started remodeling the building and defendant proceeded to and did move his things from the building; Sharpe never did open for business and did not pay any rent whatever and on September 22, 1971, the plaintiff repossessed the premises from him and started trying to re-rent it but could not do so for three months; he then called on defendant to pay these rentals for those three months and defendant refused to do so; the plaintiff testified that *at no time did he ever intend to release defendant from his obligation to pay the rental provided for in the lease; at one time the plaintiff and defendant were discussing the leasing of these premises to Mr. Sharpe and when defendant asked plaintiff if he would lease the place to Sharpe, the plaintiff told defendant that he would lease it to Sharpe and that if Sharpe would begin to pay rent that plaintiff would give defendant credit for the rentals that Sharpe paid, because he did not want to collect double rent for any time.*

The evidence showed that all of defendant's rents due under the lease were paid by defendant on time up through the end of August, 1971, and that he had not defaulted in the rentals or otherwise at the time plaintiff signed the lease with Sharpe on August 15, 1971.

■ The following is from 51C C.J.S. Landlord and Tenant § 124, p. 394: ". . . it has frequently been said and held that whether there has been a surrender by operation of law is a question of intention of the parties, to be deduced from their words and acts, and that a surrender by operation of law will not be implied against the intent of the parties as manifested by their acts . . . ."

The following is from "The Element of Intent in Surrender by Operation of Law", 38 Harvard Law Review 64, at page 81 (Note 56): "Regarding the act of the landlord in putting a second tenant in possession as evidence of his intention to accept surrender of the prior lease, we find it overcome by the more specific evidence in the form of the landlord's statement that his act is not intended to signify consent to any surrender in the sense of ending the obligation to pay rent, but is done rather with the idea of reducing the damages consequent on the non-payment of rent by the lessee. If the intent thus proved is permitted to control, the landlord will be encouraged rather than discouraged in efforts to curtail his loss . . . ."

■ We hold that the evidence in the case did not establish the issue of surrender as a matter of law in favor of the defendant, and that it created a fact issue on that point for the trial judge's determination.

The following are additional authorities which support our holding: Peticolas v. Thomas, 9 Tex.Civ.App. 442, 29 S.W. 166 (1895, no writ hist.); and Brown v. Linn Woolen Co., 114 Me. 266, 95 A. 1037 (1915).

The trial court's judgment is affirmed.