**FOUR BROS. BOAT WORKS, INC. and Columbia Star, Inc., Appellants,**

**v.**

**S & SF, INC., Appellee.**

**No. 01–99–01344–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 11, 2001.

Concurring Opinion on Denial of Rehearing
March 22, 2001.

Publication Ordered April 5, 2001.

Shannon H. Ratliff, Joe M. Roden, McGinnis, Lochridge & Kilgore, L.L.P., Houston, James J. Sullivan, Austin, for appellant.

Jack C. Brock, Chris Cahill, George W. Vie, III, Mills, Shirley, Eckel & Bassett, L.L.P., Galveston, for appellee.

Panel consists of COHEN, TAFT, and PRICE, JJ.*

## OPINION

TAFT, Justice.

Appellants, Four Brothers Boatworks, Inc. ("Four Brothers") and Columbia Star, Inc. ("Columbia Star"), challenge a judgment relating to the right of possession of property in favor of appellee, S & SF, Inc. ("S & SF"). Four Brothers and Columbia Star contend the trial court improperly rendered summary judgment in S & SF's favor as to the rights to possession of real property in Galveston County under certain subleases. Additionally, Four Brothers and Columbia contend the trial court improperly refused to grant their motion for summary judgment on the same issue.

We review: (1) whether the Master Lease was voluntarily surrendered; (2)

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

whether Four Brothers' and Columbia Star's rights of possession had vested when the Master Lease and subleases were extended; and (3) whether the admissible summary judgment evidence is legally insufficient to entitle S & SF to summary judgment. We affirm.

## Facts

In early 1975, Galveston Yacht Basin, Inc. ("GYB") leased land on the Galveston Ship Channel to Joe Grasso & Son, Inc. ("Grasso & Son").[1] The primary term of the Master Lease began on May 1, 1977, and ended on April 30, 1987. The Master Lease gave Grasso & Son the options to extend the term for two additional consecutive 10 year periods to 2007. Under the Master Lease, Grasso & Son was deemed to have exercised the options, unless it gave GYB notice to the contrary at least six months before the expiration of the lease term. All covenants and agreements in the Master Lease bound and operated to the benefit of GYB and Grasso & Son, and their respective successors and assigns. The Master Lease also permitted Grasso & Son to sublease the property.

In 1977, Grasso & Son subleased a portion of the property to Wallace Trochesset. In 1980, Trochesset assigned the sublease to Four Brothers.[2] The primary term of the Four Brothers Sublease began on May 1, 1977, and ended on April 30, 1987. Similarly to the Master Lease, it gave Four Brothers the option to extend the primary term to 2007, subject to the same notice provisions contained in the Master Lease. The Four Brothers sublease was subject to the terms and conditions of the Master Lease.

In February of 1987, Grasso Oilfied Services, Inc.[3] ("Grasso Oilfield") subleased another portion of the property to Columbia Star.[4] The primary term of the Columbia Star Lease ran from May 1, 1987 to April 30, 1997, and contained the same extension options and notice provisions as the Four Brothers sublease. Columbia Star was additionally required to renegotiate an acceptable rental rate with the lessor at least three months before the expiration of the primary term. The Columbia Star sublease was also subject to the terms and conditions of the Master Lease.

In 1991, GYB and Grasso Oilfield amended the Master Lease.[5] The Amendment added a tract of land known as the "Baroid Tract," and established a fixed termination date of April 30, 1997 for the Master Lease, thus eliminating the second option to extend the Master Lease. The Amendment ratified and confirmed that the Master Lease was in full force, except as amended.

In 1993, GYB sold S & SF the property it had originally leased to Grasso & Son, and assigned the Master Lease, the Four Brothers Sublease, and the Columbia Star Sublease to S & SF. In April of 1998, S & SF demanded that Four Brothers and Columbia Star vacate the subleased premises.

## Procedural History

Four Brothers and Columbia Star sued S & SF for a judgment declaring their right to possess the subleased premises.

---

1. We refer to the document controlling this transaction as the "Master Lease."

2. We refer to this as the "Four Brothers Sublease."

3. S & SF claims that Grasso Oilfield was the successor of Grasso & Son; Four Brothers and Columbia Star dispute that relationship for the first time in this appeal.

4. We refer to this as the "Columbia Star Sublease."

5. We refer to this document as the "Amendment."

S & SF counterclaimed for trespass to try title and a judgment declaring S & SF's rights to possession of the property. Four Brothers and Columbia Star subsequently amended their petition to assert breach of contract claims against S & SF, GYB, Tesoro Petroleum Companies, Inc. ("Tesoro"), and Coastwide Marine Services ("Coastwide"), Deceptive Trade Practices Act claims against Tesoro and Coastwide, tortious interference claims against S & SF and GYB, and breach of fiduciary duty claims against S & SF, GYB, Tesoro, and Coastwide.[6]

Both sides moved for summary judgment. The trial court granted S & SF's motion and denied Four Brothers' and Columbia Star's motion. The court conclusively found: (1) S & SF was entitled to sole possession of the property; (2) Four Brothers and Columbia Star had neither a vested right of occupancy nor a leasehold interest therein; and (3) S & SF was the owner of the property, and was entitled to possession. The trial court then severed the claims relating to the right of possession of the property.

### Standard of Review

We review the granting of summary judgment under the usual standard of review. *See Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). Where both parties move for summary judgment, we review the summary judgment evidence presented by both sides. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). When the trial court grants one party's motion and denies the other's, the non-prevailing party can appeal both the summary judgment rendered against it, and the denial of its own motion. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996).

### Effect of the Master Lease Amendment on the Subleases

In their first point of error, Four Brothers and Columbia Star assert the trial court erred by granting S & SF's motion for summary judgment and denying theirs, because neither the Four Brothers Sublease nor the Columbia Star Sublease terminated when the Master Lease ended in 1997. Four Brothers and Columbia Star argue their rights of possession did not end in 1997 because: (1) Grasso Oilfield voluntarily surrendered the Master Lease to GYB; and (2) their rights vested when the Master Lease and the Four Brothers and Columbia Star Subleases were extended.

### A. Surrender

As a general rule, a subtenant's right of occupancy under a sublease ends when the underlying master lease ends. *Rogers v. Burton*, 496 S.W.2d 673, 675 (Tex.App.—Austin 1973, writ ref'd n.r.e.). When the lessee does not exercise an option to renew the term under the master lease, the sublessees do not have any right to enforce the option against the original lessor.[7] *See Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (1961). Accordingly, because the Master Lease in this case ended on April 30, 1997, Four Brothers' and Columbia Star's rights of possession ended on the same day.

Four Brothers and Columbia Star assert, however, that a sublessee's right of possession does not end when the lessee voluntarily surrenders the master lease to the lessor. Four Brothers and Columbia Star do not cite any direct authority for this proposition, but rely on a three-step

---

6. Tesoro acquired Grasso's successor, Coastwide, and thereby acquired the Master Lease.

7. In this case, S & SF, the owner of the property, is the original lessor's assignee.

derivation. First, they cite *Hampton v. Lum*, 544 S.W.2d 839 (Tex.App.—Texarkana 1976, no writ), to argue that a lease containing an automatic renewal option is "treated as a present demise for the full period of time to which the lease may be extended subject to defeasance by a condition subsequent." *Id.* at 840. *Hampton*, however, deals with a renewal option exercised by the lessee vis-a-vis the lessor, and is, therefore, inapplicable to cases involving the rights sublessees may assert against the lessor. *See id.*

Second, Four Brothers and Columbia Star rely on *Arrington v. Loveless*, 486 S.W.2d 604 (Tex.App.—Fort Worth 1972, no writ), to argue Grasso Oilfield surrendered the Master Lease by amending it to expire on April 30, 1997. *See id.* at 606 ("A surrender of the lease . . . is the yielding up by the tenant of the leasehold estate to the landlord so that the leasehold estate comes to an end by the mutual agreement of the landlord and tenant."). Accordingly, Four Brothers and Columbia Star contend that Grasso Oilfield voluntarily surrendered its leasehold estate, which would have ended on April 30, 2007, to GYB.[8]

Finally, Four Brothers and Columbia Star cite dicta in *Doyle v. Scott*, 134 S.W. 828 (Tex.Civ.App.—Fort Worth 1911, no writ), to claim that a tenant's *voluntary* surrender of a master lease does not terminate a sublease entered into with the consent of the landlord. *See id.* at 828–29. In *Doyle*, the sublessee of part of a hotel sued the owner of the hotel for breaching the terms of the lease the sublessee had entered into with the lessee. *See id.* at 828. After the execution of the sublease, the lessee became insolvent, a receiver was appointed, the lessee's property was sold, and the hotel owner "also became the owner of the [lessee's] lease. . . ." *Id.* *Doyle*, therefore, does not involve the voluntary surrender of a lease, but a lease surrendered due to insolvency. *See id.* Nothing in Doyle suggests the surrender was voluntary.

■ Moreover, the court concluded the termination of the lessee's lease "put an end to [sublessee's] rights," and found in the owner's favor. *Id.* at 829. As a result, Four Brothers' and Columbia Star's reliance on *Doyle* is misplaced. Consequently, we reject Four Brothers' and Columbia Star's novel argument that a sublessee's right of possession continues after the lessee voluntarily surrenders the master lease to the lessor, and sustain the trial court's finding that Four Brothers' and Columbia Star's rights of possession terminated on April 30, 1997.

**B.   Vested Rights**

■ A tenancy for a definite term expires at the end of the contract period. *Bockelmann v. Marynick*, 788 S.W.2d 569, 571 (Tex.1990). In this case, Grasso Oilfield's tenancy under the Master Lease expired in 1997, pursuant to the 1991 Amendment. Four Brothers and Columbia Star argue their rights of possession under the respective subleases did not end when the Master Lease expired because their rights had vested when the Master Lease, and respective subleases, were extended. Four Brothers and Columbia Star cite no Texas authority to support this

---

8. Four Brothers and Columbia Star argue that Marc Cuenod, the Executive Director of S & SF, admitted in his deposition that the last 10 years of the Master Lease were "surrendered." Cuenod's statement is immaterial, however, because, as discussed below, the question whether Grasso Oilfield surrendered the Master Lease does not affect the rights of Four Brothers and Columbia Star under the Master Lease.

argument, but rely on authority from other jurisdictions.[9]

■ We find Four Brothers' and Columbia Star's argument unpersuasive. While their respective subleases gave Four Brothers and Columbia Star the right to extend their subtenancies while the Master Lease was in effect, that right to extend terminated when Grasso Oilfield lawfully terminated the Master Lease. *See Rogers,* 496 S.W.2d at 675. Because Four Brothers and Columbia Star were mere sublessees, rather than assignees, they had no right to extend the Master Lease once it had terminated. *See Zeidman,* 342 S.W.2d at 558.[10] Accordingly, we reject the argument that Four Brothers' and Columbia Star's possessory rights had vested.

We overrule appellants' first point of error.

### Legal Sufficiency

In their second point of error, Four Brothers and Columbia Star assert the trial court erred because the admissible summary judgment evidence is legally insufficient to entitle S & SF to summary judgment. Four Brothers and Columbia Star challenge the trial court's conclusively determining the Master Lease terminated on April 30, 1997 because there is no summary judgment evidence showing Grasso & Son, or its successors or assignees, notified GYB of its election not to exercise the final option to extend the Master Lease.[11]

Specifically, Four Brothers and Columbia Star argue: (1) the Master Lease Amendment eliminated the option to extend instead of giving notice of an election not to extend; and (2) the summary judgment evidence does not prove Grasso Oilfield is Grasso & Son's successor or assignee.

■ First, Four Brothers and Columbia Star have not offered any binding authority to support their claim that Grasso & Son's eliminating the extension option, instead of giving notice of non-renewal, raises a fact issue about their possessory rights. Moreover, because Four Brothers and Columbia Star are sublessees, not in privity with the lessor, they could have no possession rights after the Master Lease expired, regardless of how the lessee, Grasso & Son, lawfully terminated the Master Lease. *See Zeidman,* 342 S.W.2d at 558.

■ Second, any issues the nonmovant in a summary judgment proceeding does not expressly present "to the trial court by written motion, answer or other response shall NOT BE CONSIDERED ON appeal as grounds for reversal." *See* TEX.R.CIV.P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 (Tex.1993). Four Brothers and Columbia Star have thus waived the issue of whether Grasso Oilfield was Grasso & Son's successor or assignee because they did not raise it in their response to S & SF's motion for

---

**9.** Four Brothers and Columbia Star attempt to garner support for their position from several cases discussed in an A.L.R. annotation. *See* Andrea G. Nadel, Annotation, *Sublessee's Rights with Respect to Primary Lessee's Option to Renew Lease,* 39 A.L.R.4th 824 (1986). The annotation points out that some jurisdictions allow sublessees to exercise renewal options under certain circumstances. *See id.* at 832. Texas is not listed as siding with these jurisdictions. *See id.* at 832–34. Indeed, Texas

law denies sublessees this right, as illustrated in *Zeidman v. Davis,* 161. Tex. 496, 342 S.W.2d 555 (1961). *See* Nadel, at 834–39.

**10.** Four Brothers and Columbia Star were not in privity with either GYB or S & SF.

**11.** The Master Lease required Grasso & Son to notify GYB of its election not to exercise its option to extend the tenancy.

summary judgment.[12] Accordingly, we do not review this issue.

We overrule Four Brothers' and Columbia Star's second point of error.

### Conclusion

We affirm the judgment of the trial court.

COHEN, J., concurring.

COHEN, Justice, concurring.

I agree the judgment should be affirmed. Appellants, who are subtenants, received all they were entitled to under *their* contract with the original tenant—a right to enjoy the full term of any extension option exercised by the original tenant. They got that when they retained the possession under the sublease until April 30, 1997. Appellants had no right to force their lessor, Grasso, to exercise its second option to extend for another ten years until 2007. On the contrary, Grasso had a right not to exercise its second option to extend, and it exercised its right not to extend by entering the new contract in 1991.

I understand appellants' crucial contention in this case to be that Grasso "surrendered" its lease during its term, i.e., before the lease expired. Grasso did "surrender" its option to renew, but that is different from surrendering a lease during its term, before the term is expired. That, I believe, is another distinguishing factual difference between this case and *Doyle v. Scott*, 134 S.W. 828 (Tex.Civ.App.—Fort Worth 1911, no writ). The *Doyle* court never mentioned any option or extension provisions, which leads me to conclude that the subtenant's lease in *Doyle* was terminated during its term, not at the end of the primary term or one of several option terms. None of the authorities cited in appellants' excellent brief dealt with facts like those here. Those cases that held for the subtenant correctly held that the original tenant could not prejudice the subtenant by surrendering a lease during its term. They did not require the original tenant to exercise all extension options desired by the subtenant, absent a specific contractual obligation to do so.

Appellant's crucial contention that Grasso surrendered its lease is based on the arguments that Grasso had a 30–year lease, rather than a 10–year lease with two options to renew for 10 years each. The difference is decisive in this case. If this lease was for 30 years, then Grasso surrendered it early. Otherwise, Grasso did not surrender it early.

Appellants rely on *Hampton v. Lum* to argue this was a 30–year lease. 544 S.W.2d 839, 840 (Tex.App.—Texarkana 1976, no writ). In my opinion, *Hampton* does not control this case. As the majority opinion states, *Hampton* did not construe the rights of a subtenant. The same is true of all the cases cited in *Hampton*. *See Haddad v. Tyler Prod. Credit Ass'n*, 212 S.W.2d 1006 (Tex.Civ.App.—Texarkana 1948, writ ref'd); *Stewart v. Kuskin & Rotberg, Inc.*, 106 S.W.2d 1074 (Tex.Civ.App.—Texarkana 1937, no writ); *Springfield Fire & Marine Ins. Co. v. Republic Ins. Co.*, 262 S.W. 814 (Tex.Civ.App.—Dallas 1924, writ dism'd). In addition, the

---

**12.** Four Brothers' and Columbia Star's reliance on *Rizkallah v. Conner*, 952 S.W.2d 580 (Tex.App.—Houston [1st Dist.] 1997, no writ), for the proposition that an objection to a legal conclusion may be raised for the first time on appeal, is misplaced because that case applies to objections to an *affidavit* stating only a legal conclusion. *See id.* at 587. In contrast, the statement that Grasso Oilfield was Grasso & Son's successor was not included in an affidavit, but was part of the Amendment, which was in turn, part of the summary judgment evidence.

tenant in each case cited in *Hampton* renewed its option, something Grasso never did for the period of 1997–2007. *See Haddad,* 212 S.W.2d at 1007–08 (express renewal); *Stewart,* 106 S.W.2d at 1076 (implicit renewal by two-month holdover); *Springfield Fire,* 262 S.W. at 816 (express renewal). Finally, the language appellants rely on in *Hampton* appears unnecessary to the court's holding because the issue in *Hampton* was not the length of the lease, but whether the tenant gave timely notice of intent not to renew 30 days before the end of the primary term. 544 S.W.2d at 841.

With these additional remarks, I concur in the judgment.

COHEN, J., concurring on denial of appellant's motion for rehearing.

I continue to believe that the issue presented is this: Can a subtenant on a lease require the tenant to exercise the tenant's option to extend the lease? The answer is no.

Four Brothers and Columbia Star contend that the Grasso entities (Grasso & Son and Grasso Oilfield) exercised their option to extend the lease because they did not give the landlord written notice of non–extension at least six months before the expiration of the 10–year lease term, the time specified in the lease for such notice. It is undisputed, however, that Grasso Oilfield gave such notice to the landlord before the time specified in the lease. It did so by entering a new agreement that fixed a termination date of April 30, 1997, with no option to extend. That was sufficient to give up the option.

Whether the original agreement is viewed as a 10–year lease with two 10–year options to extend or as a 30–year lease subject to termination at the 10–year and 20–year points, the result is the same—the tenant took the necessary step to end

it after 20 years. Four Brothers and Columbia Star, the subtenants, cannot benefit from the fact that the tenant yielded the option by entering a new lease instead of simply giving notice under the old lease. The tenant had the right not to exercise the option, and Four Brothers and Columbia Star had no right to make it do so.