## LEHRER et al. v. WEGENHOFT et al.
### No. 11856.

Court of Civil Appeals of Texas. Galveston.
May 22, 1947.

Rehearing Denied June 12, 1947.

Chas. D. Rutta and Miller & Rutta, all of Columbus, for appellants William K. Lehrer and others.

Robert Eikel and Royston & Rayzor, both of Houston, for appellants Hutchings-Sealy Nat. Bank and others.

Fred R. Switzer, E. D. Adams and Vinson, Elkins, Weems & Francis, all of Houston, for Skelly Oil Co. and others.

Massey & Hodges, of Columbus, for appellees.

MONTEITH, Chief Justice.

This action was brought by appellees, Roy and Lavo Wegenhoft, for specific performance of a claimed option to purchase approximately 1366 acres of land in Colorado County, Texas. The option sought to be enforced had been granted to one Travis Smith by Hutchings-Sealy National Bank of Galveston, as executor and trustee, in a contract for the lease of said property. Appellees alleged that they had subleased the premises from Travis Smith and that the sublease agreement constituted an assignment of the lease and option to buy said land. They alleged that if they were mistaken in this and the sublease agreement did not have the effect of full assignment that it was then a mutual mistake of the parties as to the writing. They sought in the alternative reformation of the sublease agreement so as to include the option to purchase.

William K. Lehrer, and his associates, who had purchased said land by deed dated December 6, 1945, the Hutchings-Sealy National Bank, and Travis Smith were made parties defendant in the suit. Skelly Oil Corporation and Chicago Corporation, who held a mineral lease in said land, intervened.

In answer to special issues submitted a jury found in substance that Travis Smith and the Wegenhoft Brothers had intended and understood at the time of the execution of the sublease to appellees that the option to purchase the land in controversy was to be transferred to appellees and that the Wegenhofts had paid Travis Smith a

valuable consideration for said option, and that a payment of $600 made by Lavo Wegenhoft to William K. Lehrer was not intended by him as an acknowledgment of Lehrer as his landlord.

Judgment was rendered in conformity with this verdict that the terms of the sublease from Travis Smith to appellees be reformed so as to vest the option to purchase said land in Roy and Lavo Wegenhoft upon the same terms as it had been conveyed to William K. Lehrer and others, and that the title to said premises be divested out of appellants William K. Lehrer and others and vested in appellees. An oil lease to Skelly Oil Company and Chicago Corporation was canceled.

The record reflects the following material facts: By instrument dated November 22, 1938, Hutchings-Sealy National Bank of Galveston, as executor and trustee of the estate of Ella B. Thompson, deceased, had leased the land in controversy to Travis Smith for a period of five years, with extension privilege of three additional years.

The following provisions of the lease are material to the appeal:

"The following farm and pasture lease contract made and entered into by and between Hutchings-Sealy National Bank of Galveston, as Independent Executor and Trustee of the Estate of Ella B. Thompson, deceased, hereinafter styled Lessor, and Travis Smith of Carroll County, Missouri, hereinafter styled Lessee,

"Witnesseth:

"1. The Lessor for and in consideration of the payments to it and the covenants in its favor hereinafter set out does hereby lease and let for pasturing and farming purposes only (with rice farming prohibited) unto the Lessee for the fixed period of five years beginning January 1st, 1939, and ending on and with the 31st day of December, A.D. 1944, all of the following described property, to-wit:

*       *       *       *       *

"2. As full consideration and rental for said lease the said Lessee hereby agrees and promises to pay to said Lessor at its Bank in Galveston City and County, Texas, the total sum of Five Thousand Dollars ($5000.00), payable as follows, to-wit: * * * and, further, the Lessor reserves and shall be given one-fourth (¼) of the gross of all pecan nuts gathered each year on said property, the same to be gathered and saved in a timely and thorough manner by the Lessee at his expense, and the Lessor's said one-fourth thereof to be shipped by him as and when directed by the Lessor, but at its sole expense.

*       *       *       *       *

"3. The Lessor agrees to place Lessee in possession of said land and premises as of January 1st, 1939, as against present Lessees * * * but as to sub-tenants and share-croppers who may now be on said land and premises under some arrangement with said lessees whose term of lease is about to expire as aforesaid, the Lessee agrees to make such arrangements as he may see fit and can legally do, keeping such as he may desire and getting rid of others without any cost of liability whatever to the Lessor, and any and all expense whether of legal proceedings or otherwise in the event of Lessee seeking the eviction of any such sub-tenant or share-cropper from said premises shall be paid by the Lessee alone.

"4. Approximately one quarter of a mile outside fence is needed to completely enclose said land and premises. In the building of such outside fence the Lessee agrees to cut and haul the posts and furnish all labor and the Lessor agrees to furnish all wire and other material necessary therefor. * * *

"The Lessee may cut and use live standing timber for fence posts, braces and other fence building use in building new and repairing old fences on said property, and for necessary fire-wood for domestic use solely on said land and premises, but using therefor only timber having no value for lumber or other commercial purpose.

*       *       *       *       *

"6. This property may be used for pasturage and the growing of any crops except rice, and may be subrented or subleased in whole or in part for farming and pasturage purposes only; but in no event shall the Lessee be relieved from the payment of rent or the performance of any

other covenant upon his part hereby undertaken.

"7. Lessor reserves, and is hereby given the right to lease or contract for the exploration and development of all or any part of said property for oil or other minerals; in which case, such oil or mineral lease or contract must contain the usual and customary provisions as to the location of wells, the depth of pipes underground, and the payment of all damages to growing crops, etc.

"8. Should the Lessor, at any time during the term of this lease, have a bona fide offer for the purchase of same or any part thereof and should desire to sell the same at the price and upon the terms offered, the Lessee shall be entitled to and have the option to purchase same from Lessor at the same price and upon the same terms as the Lessor's best bona fide offer; but in the event that Lessee should not exercise such option to purchase and Lessor should sell said land and premises or any part thereof to another party, then and in such event the Lessee shall have at least twelve months notice in writing prior to October 1st, or January 1st, of each year, before he shall be required to vacate and deliver possession of said premises; and in the event he should be required by such notice to vacate on October 1st, of any year, he shall be entitled to remission of one-fourth of the rents for the current year."

By instrument dated May 22, 1944, Travis Smith subleased said premises to appellees, Roy and Lavo Wegenhoft, for the balance of the term of the original lease and its extension. The terms and provisions of the sublease material to the appeal are:

"This lease contract made and entered into by and between Travis Smith, hereinafter styled First Party, and Roy Wegenhoft and Lavo Wegenhoft, hereinafter called Second Parties, all of Colorado County, Texas, Witnesseth:

"1. For the consideration hereinafter mentioned, First Party hereby sub-leases and sub-lets, and by these presents do sublease and sub-let unto Second Parties, for pasturing and farming purposes, excluding rice farming, all that certain ranch or farm, partly cultivated and partly timbered and in pasture, containing some one thousand three hundred and seventy (1,370) acres of land, more or less, * * *.

"2. The term of this lease shall cover the period beginning with the date of this contract down to and including December 31, 1944, together with three (3) additional years from and after said December 31, 1944, it being the intention of the parties hereto to include in this lease the remainder of the time covered by the Lease between Hutchings-Sealy National Bank of Galveston, as Independent Executor and Trustee of the Estate of Ella B. Thompson, deceased, and First Party, dated November 22, 1938, and also the additional term of three (3) years, * * *.

\* \* \* \* \*

"4. Should there at any time be any default in the payment of any rental, or in any of the covenants herein contained, then it shall be lawful for first party or the Hutchings-Sealy National Bank of Galveston, Texas, to declare this contract cancelled and terminated, and to re-enter said premises and remove all persons and property therefrom, without prejudice to any legal remedies which may be used for the collection of rent, all and every claim for damage, and/or by reason of re-entry, being hereby expressly waived.

\* \* \* \* \*

"7. It is understood that the original Lessor, Hutchings-Sealy National Bank of Galveston, as Independent Executor and Trustee, as aforesaid, has reserved, in the original lease, the right to lease or contract for the exploration and development of all or any part of said premises for oil and/or other minerals, and this lease shall be subject to said right, and this lease shall also be subject to the right of original Lessor to sell said premises as provided for and under the terms of said original lease to First Party.

"8. As provided in said original lease to First Party, it is understood in case of any default in the payment of any installment of rent under this sub-lease contract for a longer period than thirty days after same is due, First Party or Hutchings-Sealy

National Bank of Galveston, as Independent Executor and Trustee, as aforesaid, shall have the right, and the same is hereby given to them, to cancel this lease and declare all of the unpaid balance of rentals for the current year at once due and payable as liquidated damages.

"9. It is further understood between the parties hereto, that all installments of rental payable by Second Parties under the terms of his sub-lease contract shall be paid by Second Parties direct to Hutchings-Sealy National Bank of Galveston, Texas, as Independent Executor and Trustee of the Estate of Ella B. Thompson, deceased."

In July or August, 1945, William Lehrer and others entered into negotiations with Hutchings-Sealy National Bank for the purchase of said land at a price of $55,000. The Bank inquired of Travis Smith as to whether he was interested in purchasing the land at that price. He declined to purchase at that time. After the Lehrer group had entered into a written contract with Hutchings-Sealy National Bank to purchase the land, Travis Smith sought to exercise the option for the benefit of appellees. By deed dated December 6, 1945, the Bank conveyed the land to Lehrer's associates, and by letter dated December 1, 1945, it notified Travis Smith that the land in controversy had been sold to the Lehrer group and requested that he vacate the premises on or before January 1, 1947. By letter dated December 10, 1945, Travis Smith notified Lavo Wegenhoft that "sometime ago" he had notified Miss Thompson and Mr. Lain, trust officer of the Hutchings-Sealy National Bank, that "he would not be interested in buying the ranch."

Appellees tendered to the Bank in their pleadings the full amount of the purchase price paid for the land and paid the sum of $50,000 into the registry of the court.

The controlling questions in the appeal are: (1) Whether, under the terms of the original lease from the Bank to Travis Smith, Smith had the right to assign that portion of the contract containing the option to purchase the leased land to appellees; and (2) whether, under the record, and under the terms of the sub-lease from Travis Smith to appellees, there existed or was created such a privity of estate or of contract between the original lessors and appellees as to authorize a reformation of the terms of the sublease so as to include therein an assignment to appellees of said option to purchase.

Appellants contend that, under Article 5237, Revised Civil Statutes, which prohibits persons who have rented lands or tenements from renting or leasing the premises during the term of said lease to any other person without first obtaining the consent of the landlord, his agent or attorney, appellees were prohibited from assigning said lease without having first obtained the consent of the owner of the premises, and that under this record and under the terms of the sublease under consideration appellees acquired no privity of estate or of contract in the leased premises.

In the case of Gulf C. & S. F. Ry. Co. v. Settegast, 79 Tex. 256, 15 S.W. 228, 230, the Supreme Court of this State, in construing said Article 5237, in its opinion said: "The language employed in this article leads us to the conclusion that the person who framed it did not have in mind the technical distinction between an assignment and an under-lease, and that it was not the intention to prohibit the one and to allow the other. Both are legally within the evil which was sought to be remedied; and while an assignment does not come strictly within the letter it is within the spirit of the statute."

In Volume 16, R.C.L., Section 381, page 877, it is said that: "As between the original lessor and the sublessee there is no privity of contract or estate and, therefore, the sublessee does not acquire, as a general rule, by virtue of the sublease merely, any right to enforce the covenants and agreements of the lessor contained in the original lease; thus a subtenant has no right of action against the original lessor on the latter's covenant or agreement to renew; nor, by consenting to a subletting, does the original lessor incur any liability to the sublessee for the sublessor's breach of his agreement contained in the sublease."

Appellants rely upon the decisions in the cases of Morrow v. Camp, Tex.Civ.App., 101 S.W. 819, reported on appeal as Allen v. Camp, 101 Tex. 260, 106 S.W. 315, and Craft v. Kinder, Tex.Civ.App., 97 S. W.2d 501, 504, in support of their contention that the consent to a subletting of leased premises. cannot be carried further and made to include a consent to an assignment thereof, including the assignment of an option therein to purchase the leased premises.

In the Craft v. Kinder case, under a state of facts almost identical with those in the instant case, the court held that where an original lease and its extensions gave lessee the right to sublet the leased property but bound him for the payment of all rents, and there was no indication that the lease inured to the benefit of either lessee's heirs or assigns, an assignee of the lease was not entitled to specific enforcement of provisions in the lease contract giving assignor first right of purchase or for damages for sale of premises to a third party. The court in its opinion said: "From the record it clearly appears that the lessors, by the terms of the original lease and by the terms of all the extension agreements, intended to hold the original lessee for all rents, and looked to him only for the payment thereof. In the original lease no right to sublet was given, excepting only the tillable lands covered by the lease. In the extension agreement the lessee was given the option of subletting the lands or any part thereof, but was specifically bound for all rents. The lease does not use words showing that it inured to the benefit of either the heirs or the assigns of the original lessee. We construe this lease to mean that under its terms the original lessee had no legal right to dispose of his interests in the leasehold estate other than to sublet the premises."

In the case of Morrow v. Camp, Tex. Civ.App., 101 S.W. 819, this court, under a similar state of facts, held that the right to sublet a farm all to one tenant or to many tenants was an entirely different thing from an assignment of the entire contract, and that an agreement, express or implied, that Morrow might sublease the land did not by any means include the right to assign the entire contract.

On appeal in Allen v. Camp, 101 Tex. 260, 106 S.W. 315, the Supreme Court, in approving the holding of the court in Morrow v. Camp, in its opinion said: "It appears that, by his plea in reconvention, Allen sought to recover damages from Camp under a contract between him and Morrow, which the latter had undertaken to assign to Allen. The Court of Civil Appeals held that Allen could maintain no action upon, or for the breach of, that contract, for the reason that, because of the personal trust therein reposed by Camp in Morrow, it was not assignable. We think this conclusion, the reasons for which are sufficiently stated in the opinion referred to, was correct."

█ The record in this case, we think, clearly indicates that there was neither privity of contract nor of estate between appellees and the original lessors, the Hutchings-Sealy National Bank. It is undisputed that, prior to the execution of the sub-lease, the Bank, through its trust officer, Mr. Lain, expressly stated to Travis Smith and to Lavo Wegenhoft, who conducted all negotiations for appellees in connection with the securing of the sub-lease, that the Bank would not assign said lease to appellees, and that, while the lease provided that Travis Smith had the right to sublease the property, the Bank would not make a new lease to them and that, in the event Travis Smith subleased the land to appellees, it would hold Smith responsible for all of his obligations under the original lease, including the payment of the rentals due thereunder.

In the original lease Travis Smith was only given the right to sublease the land for farming and pasturage purposes and no language was used therein indicating that the parties intended that the benefits conveyed therein inured to the heirs or assigns of Travis Smith.

The sublease expressly provided that the lessor reserved the right to re-enter and take possession of the premises on the failure by lessees to pay rentals when due and lessor reserved a lien on the property of

appellees on the subleased premises to secure the payment of the rents.

In the case of Davis v. Vidal, 105 Tex. 444, 151 S.W. 290, 42 L.R.A.,N.S., 1084, it is held that, when an original lease is transferred to a sublessee and the instrument of sublease gives the sublessor the right to declare the transfer null and void and dispossess sublessee if he shall fail to pay rent, the sublessor thereby has a contingent reversionary estate or interest in the premises and rentals and the contract is one of subletting as distinguished from an assignment.

It follows, we think, that since there was no privity of estate between appellees and Hutchings-Sealy National Bank, or the owners of the property, there could be no such privity between appellees and appellants who succeeded to the Bank's title to the land.

There are, however, conflicting decisions by the courts of this State which hold that the power to sublet given in a lease contract carries with it and includes the power to assign the lease.

Appellees rely on the holding in the case of Menger v. Ward, Tex.Civ.App., 28 S. W. 821, 824, reversed on other grounds by the Supreme Court at 87 Tex. 622, 30 S. W. 853, in which it is held that "An assignment of a lease would be nothing but a subletting for the whole term. * * * In our statute the assignment of a lease is not inhibited, but, by judicial construction, it has been extended to assignments. Moser v. Tucker, 87 Tex. 94, 26 S.W. 1044; Gulf, C. & S. F. Railway Co. v. Settegast, 79 Tex. 256, 15 S.W. 228; Forrest v. Durnell, 86 Tex. 647, 26 S.W. 481. If the inhibition against subletting includes an assignment of the lease, it would seem that the power to sublet given in the contract would include the power to assign."

The decisions in the cases of Logan v. Green, Tex.Civ.App., 53 S.W.2d 119, and Marathon Oil Co. v. Lambert, Tex.Civ. App., 103 S.W.2d 176, are in accord with the holding in the case of Menger v. Ward.

After a careful consideration of the conflicting decisions by the courts of this State we have concluded that the decisions which hold that said Article 5237, in effect, prohibits an assignment of the lease without the consent of the landlord or his agent are supported by better reasoning and are based upon sounder principles than the decisions to the contrary.

Appellants complain of the action of the trial court in entering judgment canceling an oil lease on said land in favor of appellants, the Chicago Corporation and Skelly Oil Company, for the alleged reason that the rights of appellees in said land, if any, were in equity, while under the terms of said oil and gas leases said appellants acquired a legal title in the minerals conveyed thereby, and for the reason that there is no evidence in the record that said appellants did not pay value therefor or that either of them had notice of appellees' equity or equitable right to reform said sublease on account of alleged mutual mistake.

The original lease to Travis Smith was dated November 22, 1938, and the sublease from Travis Smith to appellees was dated May 22, 1944. Both instruments were recorded in the deed records of Colorado County at the time of the execution of said mineral lease. Appellees were ostensibly occupying said premises under the terms of said sublease, which did not contain an option to purchase the land. The original lease expressly provided that the Hutchings-Sealy National Bank, as trustee, had the right to lease said land for oil. On December 6, 1945, the Hutchings-Sealy National Bank conveyed the fee of said land to William K. Lehrer and others, and on December 28, 1945, they executed and delivered said mineral lease to R. N. Ranger, who, on January 25, 1946, conveyed the lease to the Chicago Corporation and Skelly Oil Company. There is no evidence that these appellants did not pay value for said lease, or that either of said appellants, or any one representing them at the time, had any notice of appellees' claim that they were entitled to an option to purchase said land.

It is the established law in this state that one who claims an equitable title or interest in land as against a subsequent purchaser of the legal title assumes

the burden of showing that the latter was not an innocent purchaser—that is, that he did not pay value or that he purchased with notice of the equity. 43 Tex.Jur., Section 406.

The following cases are in accord with the rule above announced: Thompson v. Bracken, Tex.Civ.App., 93 S.W.2d 614, 615; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Gillian v. Day, Tex.Civ.App., 179 S.W.2d 575.

█ It follows from these conclusions that the judgment of the trial court must be reversed and, the facts in the case having been fully developed in the trial court, judgment is here rendered that appellees take nothing by their suit.

Reversed and rendered.