## M. B. Zeidman, Et Ux v. Chas. A. Davis, Et Al.

No. A-8080. Decided February 1, 1961.
(342 S.W. 2d Series 555)

*Duckett & Duckett,* of El Campo, *Vinson, Elkins, Weems & Searls* and *M. C. Chiles,* all of Houston, for petitioners.

*Chas. E. Owens,* of Wharton, for respondents.

Mr. Chief Justice Calvert delivered the opinion of the Court.

This suit for declaratory judgment was filed by M. B. Zeidman (Morris Zeidman) and others, petitioners, against Chas. A. Davis, Jr. and others, respondents. Petitioners sought a construction of a farm lease executed by petitioners, as lessors, and the

respondent, Pervis R. Landry, as lessee, and a termination of the lease. The cruicial questions in the case were whether the lease was for a three or a four year term and whether an option to renew it for a five year period had been timely exercised.

The trial court found as facts that the parties intended the lease to be, and that it was, for a term of three years, but that the option to renew it for five years had been timely exercised. The court concluded that the lease had not terminated but by the exercise of the option was extended for a five year term ending December 31, 1964. Accordingly, judgment was entered awarding possession of the premises to Landry and those holding under him for a term ending December 31, 1964. The Court of Civil Appeals affirmed. 338 S.W. 2d 530.

The controversy stems from the term clause of the lease agreement with Landry. It reads as follows: "The term of this lease shall be for a period of three (3) years commencing on January 1, 1957 and terminating on December 31, 1960, unless terminated at an earlier date under the terms hereof." Considered as standing alone, the clause is undoubtedly ambiguous. The term could be for three years or it could be for four years. As indicated above, the trial court found that it was for a term of three years ending on December 31, 1959. Considering the instrument as a whole, including many other provisions which it is unnecessary to mention, the court could hardly have found otherwise. However that may be, the finding has not been challenged and must be accepted as establishing the fact.

The exercise of the option to renew the lease was conditioned on the giving of written notice by the lessee "of his intention to exercise such option not less than six (6) months prior to the termination of the three year primary term." The lease contained an additional provision as follows: "Lessee shall have the right to sub-lease any part of the leased premises, but shall not have the right to assign the lease in whole, without first obtaining the written consent of the Lessors so to do." The lease was dated August 27, 1956.

On October 1, 1956 Landry sublet a part of the premises to one Q. J. Doree, Jr. The provisions of that sub-lease have no bearing on the rights of the parties to this suit. The remainder of the premises was sublet by Landry to respondent, Chas. A. Davis, Jr., on January 15, 1958. Paragraph 2 of the sub-lease reads as follows:

"The term of this sublease shall commence on the signing of this instrument and shall terminate on December 31 ,1960, unless the option to renew for an additional five (5) years is exercised, in which event this sublease shall terminate on December 31, 1965.

"Under the terms of the original lease, Pervis R. Landry has the option to extend the three (3) year term of the original lease for an additional period of five (5) years. Pervis R. Landry hereby agrees to exercise that option by the method stated in the original lease if the said Charles A. Davis, Jr. so desires to extend said lease and so directs the said Pervis R. Landry to exercise said option in the manner required by the original lease."

The record discloses that the sub-lease was prepared by Davis or his attorney, and it may be assumed that the erroneous termination dates were placed in the sub-lease by them.

No written notice of the exercise of the option having been given by July 1, 1959, the lessors, on July 7, 1959, notified both Landry and Chas. A. Davis, Jr. that the lease would be terminated on December 31, 1959. In a letter to the lessors, dated July 20th, Davis enclosed an undated written statement from Landry giving notice that he was exercising his option to renew the lease for a term of five years. Davis did not by his letter purport to exercise an option. He did make known his intention to protect all of his "rights and privileges as sub-lessee from Pervis R. Landry."

As a basis for its judgment the trial court found that by virtue of the sub-lease Davis succeeded to all of the rights of Landry; that the termination date, December 31, 1960, stated in the original lease, was a mistake made by the lessors in the preparation of the instrument; that the mistake caused Davis to fail to exercise the option according to its terms; that the lessors had notice that Davis intended to exercise the option; that Davis had made substantial improvements on the premises and would suffer substantial damage if the lease were terminated on December 31, 1959; that lessors were not damaged by failure of Davis to exercise the option by July 1, 1959, and that Davis attempted to exercise the option after receiving the notice of termination from lessors.

■ The findings of fact and conclusions of law filed by the trial court reflect that court's theory of the case. It was the view of the court that the subletting of the premises by Landry to Davis invested Davis with the right to exercise the option contained in the lease, and that under the facts found it would be inequitable to hold him to a strict compliance with the notice requirement.

The theory on which the Court of Civil Appeals affirmed seems somewhat different. That court, by citing 10A Texas Jur., Contracts, Sec. 289-295, as authority, seems to have treated the lease to Landry as a contract for the benefit of third persons, one of whom was Davis, and to have held that the facts found by the trial court estopped the lessors from asserting the termination of the lease at the end of the primary term. How estoppel to assert termination on December 31, 1959 would operate to award Davis a new lease for five years is not clear. Perhaps the court meant to hold that the lessors were estopped to assert that the notice given on July 20th was not a timely compliance with the notice requirement. In any event, we reject the theories of both courts.

The lease granted the option to Landry. He did not exercise it within the time prescribed. There are no findings of fact which make it inequitable as to him to require a strict compliance with the notice provision. Indeed, there could be none. The record discloses that he left the state before he executed the sub-lease to Davis and is a resident of the State of Mississippi. He filed a formal answer in this suit through an attorney but he neither appeared at the trial nor testified by deposition. Aside from the distinguishing facts of the two cases, the equitable rule approved by this court in Jones v. Gibbs, 133 Texas 627, 130 S.W. 2d 265, quoted in the opinion of the Court of Civil Appeals, can have no application when applied to Landry. There is no evidence that he was misled by the ambiguous language in the lease, no evidence that he intended to exercise the option unless requested to do so by Davis, and no evidence that he will suffer substantial damage if the lease is terminated. Neither of the courts below rested its judgment on the right of Landry to a late exercise of the option. As to him, there is nothing in the record to justify a holding that he was relieved of a strict compliance with the notice provision in order to exercise the option. This court recognized in Jones v. Gibbs, 133 Texas 627, 130 S.W. 2d 265, 271, that in the absence of equities an optionee is held to a strict compliance with the terms of the option agreement. That is the general rule. See 44 A.L.R. 2d 1362. As to Landry the lease terminated on December 31, 1959.

■ There is no basis in law for holding that by virtue of the sub-lease Davis succeeded to all of the rights of Landry. He is a sub-lessee under the lease and not an assignee of the lease. There is a distinction. There is no privity of contract between a sub-lessee and the original lessor. See Amco Trust, Inc. v. Naylor, 159 Texas 146, 317 S.W. 2d 47, 50; Sinclair Refining Co. v. Womack, Texas Civ. App., 66 S.W. 2d 402, 405, no writ history; Lehrer v. Wegenhoft, Texas Civ. App., 203 S.W. 2d 245, writ refused, n.r.e.

And so it is held that a sub-lessee does not acquire or succeed to the option of a lessee to purchase the premises, Craft v. Kinder, Texas Civ. App., 97 S.W. 2d 501, writ dismissed; Lehrer v. Wegenhoft, Texas Civ. App., 203 S.W. 2d 245, writ refused, n.r.e., or to his option to renew the lease. Audubon Hotel Co. v. Braunnig, 120 La. 1089, 46 So. 33; Cifelli v. Santamaria, 79 N.J.L. 354, 75 Atl. 434. And see cases cited in Annotation, 127 A.L.R. 948. The lease to Landry expressly prohibited assignment without the written consent of the lessors. A holding that the sub-lease to Davis invested him with all of the rights of Landry would completely nullify that provision of the lease.

Since Davis had no legal right to exercise the option and thus to extend the term of the lease, his misinterpretation of the lease and detrimental conduct under the misinterpretation would not confer on him the right to exercise the option belatedly or estop the lessors from asserting that the option had not been timely exercised by Landry.

The judgments of the Court of Civil Appeals and the trial court are reversed. Inasmuch as the primary term of the lease to Landry has expired, judgment is here rendered declaring the lease terminated.

Opinion delivered February 1, 1961.