**Curtis D. ROBERT, Independent Executor of the Ed Rachal Estate, Appellant,**

**v.**

**E. C. MILSTEAD RANCHING, INC., Appellee.**

**No. 7240.**

Court of Civil Appeals of Texas, Beaumont.

June 3, 1971.

Rehearing Denied July 29, 1971.

J. G. Hornberger, Laredo, Strong, Pipkin, Nelson, Parker & Powers, Beaumont, John Funk, Falfurrias, for appellant.

Kampmann, Kampmann, Church & Burns, San Antonio, for appellee.

KEITH, Justice.

The appellee, plaintiff below, brought suit for a declaration of rights that the appellant, defendant below, had failed to exercise the option of renewal granted to him in a sub-lease upon certain real property situated in Webb County, and that the sub-lease had terminated according to its terms on June 30, 1970. Upon plaintiff's motion, a summary judgment was entered in favor of the plaintiff in accordance with the prayer of the petition and defendant has appealed. We will refer to the parties as they appeared in the trial court.

The land involved is known as the La Mesa Ranch consisting of approximately 72,000 acres of land owned by Palafox Exploration Company (hereinafter "Palafox"); and, at all times material to this suit, was under lease from Palafox to plaintiff. Plaintiff and defendant's decedent had entered into a sub-lease, as authorized by the original lease from Palafox, and it had been extended in accordance with its terms. After the expiration of the base lease between Palafox and plaintiff, a new lease was entered into which was followed by a new sub-lease between our parties. This new sub-lease was made on January 25, 1965 for a primary term of five years with an option for an additional five-year period, the option being quoted in the margin.[1] The sub-lease specifically incorporated the underlying Palafox lease and defendant bound himself "to fully comply with all terms and conditions of such lease" between appellee and Palafox. Subsection 12 of the base lease set out the manner in which appellee was required to exercise his option, it being set forth in the margin.[2]

On December 29, 1969, defendant mailed a letter to plaintiff saying:

"Although we haven't heard from the three sub-lessees under me it seems certain that everybody wants to keep their renewal with the tax ascalation [sic] clause as of July 1, 1970."

On February 23, 1970, plaintiff wrote to defendant; and, after referring to the renewal provisions found in the sub-lease said:

"Since I have received no definite statement from you indicating a desire to exercise the option and the time is now long past, I wish to request that you vacate the leasehold premises at the end of the present term on June 30, 1970."

Defendant replied on March 3, 1970, saying in part:

"Mr. Milstead, after making a thorough search and upon the advice of respected counsel I feel that my letter of December 29, 1969 was sufficient notice to you of my exercising my option of renewal as provided in the sub-lease from you under the base lease from Palafox Exploration Company for the period beginning July 1, 1970 and ending June 30, 1975. The letter was sufficient notice

1. "Sub-Lessor is granted an option under the terms of the above mentioned lease from Palafox Exploration Company of extending his lease with it for an additional term of five years commencing July 1, 1970 and ending June 30, 1975, the terms and conditions of which are set out in the substantial copy thereof attached hereto as a part hereof. A like option is hereby granted by Sub-Lessor to Sub-Lessee as to the lands described in Exhibit 'A' attached hereto subject to the terms hereof and to the terms of such option to Sub-Lessor and to the rental payments to Sub-Lessor as hereinabove provided for, provided that Sub-Lessor elects to exercise its option to renew as granted in such lease from Palafox Exploration Company."

2. "Should Lessee elect to take the optional term hereinabove provided for, he shall so advise Lessor in writing by notice delivered in person or by certified mail to Richard S. Brooks, 608 First National Bank Building, Midland, Texas or to the then registered agent of Lessor at its then registered office, on or before January 1, 1970, and if he should fail to elect such optional term he shall redeliver the demised premises to Lessor on June 30, 1970."

and should you have had doubts of my intentions to exercise a renewal upon receiving my letter, you would have so apprised me by phone or letter long before your notice dated February 23, and which I did receive February 25, 1970."

The trial court found as a fact that defendant failed to exercise his option and rendered judgment for plaintiff.

In his first point, defendant says that it was error for the trial court to enter the summary judgment "because a genuine issue as to a material fact exists concerning the construction and meaning of that part of the sub-lease dealing with the option."

Appellant says that he "interprets" paragraph 4 of the sub-lease (fn. 1, supra) as granting him an option "subject to a condition precedent. * * * that before Appellant could exercise his option, Appellee had to elect to exercise its option with Palafox Exploration Company and that in effect, Appellant's option did not ripen until after Appellee's election." He also calls attention to the fact that the paragraph "is silent as to how appellant was to exercise his option." Additionally, defendant points to the fact that the plaintiff was required, under the terms of its base lease with Palafox, to give his notice of renewal to a named individual; and, he argues, that if he is bound thereby, and had he "given notice in strict compliance with paragraph 12 [of the base lease with Palafox], he would have given no notice at all."

■ We disagree and reject the contention so advanced. In this state it is clear that "in the absence of equities an optionee is held to a strict compliance with the terms of the option agreement." Zeidman v. Davis, 161 Tex. 496, 342 S.W.2d 555, 558 (1961). Defendant makes no contention that he gave any notice of renewal to Palafox or that he gave written notice to plaintiff in any manner other than in his letter of December 29, noticed above.

As a sub-tenant, he was not entitled to give notice of renewal of the base lease, since there was no privity of contract between him and Palafox. *Zeidman*, supra. His rights of renewal were those contained in his own contract with plaintiff and whether he did or did not exercise such rights must be determined from an analysis of his own letter, an undisputed fact.

■ We agree with defendant that where there is a question relating to the true meaning of an ambiguous instrument, summary judgment is improper. Tinnin v. Crook, 333 S.W.2d 617, 619 (Tex.Civ. App.—El Paso, 1960, error ref. n. r. e.); Chapa v. Benavides Mill & Gin Company, 420 S.W.2d 464, 467 (Tex.Civ.App.—San Antonio, 1967, error ref. n. r. e.). But our analysis of the contract does not reveal an ambiguity; and the conduct of the parties, particularly the defendant and his decedent, militates against any such holding.

During the existence of the previous lease, containing substantially the same provisions as to renewal, defendant's decedent gave notice of renewal directly to the plaintiff in plain and unequivocal terms— and the lease was renewed without question. Here, defendant gave notice to plaintiff, and it is the sufficiency of the notice—not the time it was given or the person to whom the notice was delivered—which is determinative of the rights of the parties.

■ The notice, to be effective in law, must indicate the definite and unconditional determination of the sub-lessee to exercise his option of renewal and in order to be binding upon his lessor, must state clearly his intention to renew on such terms and for such a period as specified in the option. 51C C.J.S. Landlord & Tenant § 62(2), pp. 195–196. Defendant's letter of December 29 was clearly insufficient, as a matter of law, to constitute an exercise of the right of renewal granted by the terms of the contract. Indeed, we do not understand defendant to contend now that his letter was sufficiently definite and certain to constitute an effective exercise of the

option. The trial court, under the uncontroverted record herein, was correct in holding that it was legally insufficient as an exercise of the option granted, and we approve the holding. Point one is overruled.

Defendant contends, by his second point, that the trial court erred in entering the summary judgment for the plaintiff "because a genuine issue as to a material fact exists concerning waiver of notice by the Plaintiff." There was a general pleading on the subject which we quote in the margin [3] and defendant refers to his deposition testimony which was before the court in support thereof. We do find some mention in defendant's deposition of conversations between the parties with vague reference to the possibility of each renewing his respective lease with his landlord, but find no evidence therein which raises an issue of fact that plaintiff waived the requirement that notice of renewal be made in accordance with the contractual provisions. Further, we note that defendant's two letters previously quoted make no such claim; indeed, it is clear that before suit was filed defendant was relying upon the sufficiency of his December 29 letter, rather than any oral notice of renewal or waiver of a written notice.

In Texas & P. Ry. Co. v. Wood, 145 Tex. 534, 199 S.W.2d 652, 656 (1947), the court said:

"A waiver has been frequently defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."

Or, as was said in Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958):

"A waiver takes place where one dispenses with the performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it. 92 C.J.S. Waiver p. 1061. Waiver, of course, is a matter or question of intention."

We find nothing in the deposition testimony which would lead to even an inference that there was a waiver, as defined by our courts, of the written notice. If defendant expected to defeat the plaintiff's motion for summary judgment, it was incumbent upon him to come forward with some "evidence" sufficient to raise the question of waiver. See, Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492, 500 (1958). The pleading does not constitute summary judgment evidence. Hidalgo v. Surety Savings and Loan Association, 462 S.W.2d 540, 545 (Tex.Sup., 1971). Point two is overruled.

Having reviewed the cause in accordance with the rules set out in Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41, 47 (Tex.Sup., 1965), and finding no error, the judgment of the trial court is affirmed.

---

3. "That on many occasions during the calendar year of 1969, Defendant had conversations with Mr. E. C. Milstead; that in the course of said conversations Defendant notified Mr. Milstead of his intention to remain in possession of said leasehold estate for the additional period ending June 30, 1975, and that the said E. C. Milstead by his actions led Defendant to believe that his notice had been accepted; that by letter of December 29, 1969, a copy of which letter is attached to Plaintiff's Original Petition, and marked 'Exhibit B', Defendant again confirmed his understanding."