Harvey R. HOUCK, Jr., et al.,
Appellants,

v.

The KROGER CO. et al., Appellees.

No. 1657.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Aug. 31, 1977.

Rehearing Denied Sept. 21, 1977.

Thomas J. Holmes, Jr., Charles Crady, III, Childress, Port & Crady, Houston, for appellants.

Robert L. Rouner, Bracewell & Patterson, Houston, for appellees.

J. CURTISS BROWN, Chief Justice.

This is an appeal from an order granting a temporary injunction.

In March 1968, appellee, The Kroger Company (Kroger) entered into a sale-lease-back agreement with Houck-Lister. Appellants (the Houcks) are the successors in interest to the Houck-Lister partnership. Under this agreement Houck-Lister purchased a shopping center development, containing at that time a Kroger and Super X store, a subsidiary of Kroger, at the corner of Westheimer and Voss Road in Houston, Houck-Lister, in turn, leased the Kroger and Super X space back to Kroger at a monthly rent of $2,650.00.

The lease agreement contained, among other provisions, the following paragraph:

25. If at any time Tenant shall desire to sublet or assign the demised premises, it shall notify Landlord of the name of the proposed subtenant or assignee and of the general nature of the business which such subtenant or assignee proposes to conduct. If the business which such subtenant or assignee proposes to conduct would conflict with exclusive rights granted in leases to other tenants, Landlord may, within ten (10) days of receipt of such notice, refuse to approve such sublease or assignment. If Landlord fails to approve such subtenant or assignee within ten (10) days after receipt of such notice, or if Landlord refuses to approve such subtenant or assignee for any other reason than that permitted above, Tenant may terminate the Lease. Landlord shall, at any time Tenant may request, supply to Tenant copies from leases to other tenants of all clauses granting exclusive rights to conduct various businesses in the Shopping Center.

The lease also provided:

28. The provisions of this Lease shall bind and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors and assigns.

After giving notice to appellants as provided, Kroger executed a sublease of the Kroger store space in January 1977, to Bromo Distributors, Inc. (Bromo), a record and tape retailer/wholesaler, at a monthly rent of $7,950.00. This lease was executed despite appellants' refusal to consent to the sublease as required by the lease contract. Appellants gave notice to Kroger on February 3, 1977 that they considered Kroger in default and of their intention to reenter the premises after the expiration of 30 days unless the default was cured as provided in the contract. On March 1, 1977, Bromo took possession and began remodeling the premises for its retail tape and record outlet to be known as "Sound Warehouse." On March 6, appellants filed for a tempo-

rary injunction against Bromo. A hearing on this suit was delayed until March 10, to allow appellants to bring in Kroger as a defendant. Subsequently, appellants dismissed this first suit. On March 6, pursuant to their claimed right to reenter, the appellants drilled out and changed the locks on the premises, and took possession. Bromo was unable to enter the building to continue its remodeling. On March 9, Kroger instituted this action for declaratory judgment and injunctive relief against appellants, and a hearing on this motion was set for March 17. At the same time, Kroger removed a dry-wall partition which sealed off a roll-up door between the Super X and Kroger store premises, and along with armed security guards, appellees entered and resumed remodeling. This door had been closed-off by Kroger upon its vacating and subletting the premises.

Within a few minutes after appellees' entry, appellants called the Houston police and proceeded to have all the Kroger and Bromo employees, including their attorney, arrested pending criminal trespass charges. Shortly thereafter, these charges were dropped and the employees and attorney released. The following day, Kroger and Bromo reentered the premises with their security guards through the roll-up door. Appellants' security guards again entered and forced the Kroger and Bromo employees off the premises at gunpoint. On March 17, the hearing on appellees' temporary injunction commenced. The trial court issued a temporary restraining order putting Kroger in possession until 1:30 the following day when the hearing on the temporary injunction was to resume. At the hearing on the following day, the appellants took the position that the temporary restraining order, as written, was a temporary injunction, gave notice of appeal and requested the court to fix a supersedeas bond. Appellants refused to participate further in the hearing and walked out of the courtroom while the court continued the trial. At the end of the hearing, the court granted a temporary injunction. From this order, appellants have perfected their appeal.

Appellants assign several points of error attacking the trial court's order. They argue that they were not afforded the benefit of a full hearing on the second day of trial; that Bromo had no standing to seek the injunction; that the petition was not properly verified; that appellees had an adequate remedy at law; that neither appellee had shown irreparable injury or a probable right of recovery; that under the lease contract, Kroger could not sublease to Bromo restricted only by an interference with the exclusive rights of other tenants; and finally, that appellees were not in the last continued, uninterrupted possession of the premises as found by the court.

In reviewing the order of the trial court, we are guided by the well-settled rule that the court has broad discretion in its determination of whether to issue a writ of temporary injunction. Its order should be reversed only when an abuse of discretion is shown. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953). An applicant for such relief generally must show a "probable right" and "probable injury." *Id.*, 261 S.W.2d at 552. It has sometimes been said that there must be a finding of irreparable injury or an inadequate remedy at law. *Inman v. Padrezas*, 540 S.W.2d 789, 797 (Tex.Civ.App.-Corpus Christi 1976, no writ).

In the instant case the question of probable right of recovery involves construction of the provisions in the lease. We construe paragraph 25 of the lease agreement set forth above to grant to the tenant the right to sublet or assign the premises provided that the business which the subtenant or assignee proposes to conduct would not conflict with the exclusive rights granted in the leases to other tenants. It is undisputed in this record that the sublease in question does not involve a business conflicting with exclusive rights granted to any other tenant in the shopping center. The provision of the lease that in the event the landlord fails to approve the subtenant for any reason other than the single reason expressly permitted "[t]enant may termi-

nate the lease", affords the basis for argument that it constitutes the landlord's exclusive remedy. On the other hand, the permission to sublet having been granted, the right of the tenant to do so could well continue in effect along with the right of termination given as an additional contractual remedy. Such conflicting construction should be determined in a trial on the merits rather than on temporary injunction. It is enough if the evidence at the hearing "tends to sustain it." *Transport Co. of Texas v. Robertson Transports, Inc.*, 261 S.W.2d at 552. Furthermore, the language in paragraph 28 of the lease "[t]he provisions of this lease shall bind and inure to the benefit of the parties hereto, their heirs, executors, administrators, *successors and assigns*" imports a right on the part of the lessee to sublease. [Emphasis added.] *Penick v. Eddleman*, 291 S.W. 194, 195 (Tex.Com.App. 1927); *Dillingham v. Williams*, 165 S.W.2d 524, 526 (Tex.Civ.App.-El Paso 1942, writ ref'd w.o.m.). We conclude, therefore, that the finding of the trial court as to the appellees establishing a "probable right" was not an abuse of discretion.

■ With respect to "probable injury", Kroger has clearly established a substantial loss in the difference in rent between the amount payable under the lease and the amount being paid by the sublessee. Such monetary harm, however, would not constitute irreparable injury, and an adequate remedy at law for damages does exist. There is no suggestion that appellants could not respond in damages if they wrongfully deprived Kroger of the right to sublease as provided in paragraphs 25 and 28 of the lease agreement.

■ As to Bromo, evidence was introduced which fully justified the trial court's finding that it would sustain irreparable injury for which it does not have an adequate remedy at law. Appellants correctly point out, however, that there is no privity of contract between a sublessee and the original lessor. Therefore, a sublessee, like Bromo, may not enforce, merely by virtue of the sublease, the covenants and agreements of the lessor contained in the original

lease, such as an option to renew or purchase. *Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (1961); *Lehrer v. Wegenhoft*, 203 S.W.2d 245, 249 (Tex.Civ.App.-Galveston 1947, writ ref'd n.r.e.).

■ Aside from these questions of "probable right" and "probable injury", we affirm the order of the court below on the ground that it was justified by the finding that appellees were in the last peaceable possession of real estate so as to entitle appellees to a temporary injunction restraining appellants from interference with appellees' possession by force or violence. *See Gulf Oil Corp. v. Smithey*, 426 S.W.2d 262 (Tex.Civ.App.-Dallas 1968, writ dism'd); *Owens v. Texaco, Inc.*, 368 S.W.2d 780 (Tex. Civ.App.-Beaumont 1963, no writ); *Hartley v. Brady*, 114 S.W.2d 406 (Tex.Civ.App.-Amarillo 1938, no writ).

■ We hold no brief for the conduct of either party to this dispute. Both have resorted to self-help and ignored the relief available through the courts. Both initiated actions calculated to endanger the parties, their employees and others innocently in the vicinity. Surely the courts are not powerless to prevent the use of violent means to settle such disputes. Although we find sufficient guilt to extend to both parties, and we cannot condone the conduct of either, it is clear that appellants elected to abandon the suit they had filed to resolve the issues and to undertake to reenter the premises by forcefully drilling out and changing the locks, and, thus initiated the events which resulted in the escalation of violence. The purpose of a temporary injunction is to maintain the status quo pending final litigation of the controversy. *Story v. Story*, 142 Tex. 212, 176 S.W.2d 925, 927 (1944). Reliance on self-help to settle such dispute evidences a disrespect for legal processes and affords the trial court an adequate basis for the issuance of its writ of injunction. All assignments made by the appellants have been considered and are overruled.

Affirmed.