**FORESTPARK ENTERPRISES, INC., Appellant,**

v.

**John C. CULPEPPER, Jr., and Anrem Corporation, Appellees.**

No. 2–87–019–CV.

Court of Appeals of Texas, Fort Worth.

June 23, 1988.

Rehearing Denied Aug. 17, 1988.

McGregor, White, Malesovas & McSwain, and Greg White, Waco, for appellant.

McLean, Sanders, Price, Head & Ellis, and Daniel A. Foster, Fort Worth, for Culpepper.

Reynolds, Shannon, Miller, Blinn, White & Cook and Tim G. Sralla and E. Allen Taylor, Fort Worth, for Anrem Corp.

Before BURDOCK, JOE SPURLOCK, II and FARRIS, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is a suit for damages. Appellant, Forestpark Enterprises, Inc. (Forestpark) brought suit against appellees, by way of a third-party action, after it was sued by Kimbell, Inc. (Kimbell) for unpaid rent under a sublease agreement. Appellees, John C. Culpepper, Jr. (Culpepper) and Anrem Corporation (Anrem), filed separate motions for summary judgment. The trial court granted both motions for summary judgment. In its sole point of error, Forestpark contends that the trial court improperly granted summary judgment to appellees.

We affirm.

In August, 1969, Culpepper was the sole owner and manager of Southmore Plaza Shopping Center in Pasadena, Texas. Culpepper leased to Kimbell approximately 10,000 square feet of space in the shopping center. Kimbell operated a Jetton's Restaurant on the leased premises for approximately five years. Subsequently, Kimbell subleased the premises to Furr's. In the summer of 1976, Forestpark (then operating under the name Frontier Enterprises, Inc.) subleased the same premises from Kimbell for a restaurant. Culpepper approved the sublease in July 1976. The term of the lease was to run from October 1, 1976 through September 30, 1978. Forestpark then began operating a steak restaurant in October, 1976.

In April, 1975, Culpepper sold one-half of his interest in Southmore Plaza to American National Insurance Company (American National). In February, 1977, Culpepper sold his remaining one-half ownership interest in Southmore Plaza to American National who then became the sole owner. However, Culpepper remained as manager until May 1, 1977. American National then retained Anrem to manage the property.

A gameroom, known as "Popeye's," was located adjacent to the premises subleased by Forestpark. Popeye's was already in existence and operating when Forestpark first inspected Southmore Plaza. Soon after Forestpark's sublease was approved, Forestpark began construction to modify the leased premises. During this period, there were repeated acts of vandalism which Forestpark attributed to the clientele of Popeye's. According to Forestpark, Popeye's encouraged and attracted "ruffians and n'er-do-wells" who harassed and drove-off Forestpark's restaurant patrons.

In its petition, Forestpark alleged that the problems with the patrons of Popeye's continued throughout the twenty-one months it operated the restaurant, and ultimately forced it to close the business. In March, 1977, Wicks and Meyers, officers of Forestpark, met with Culpepper to discuss the problems which they argued were caused by Popeye's clientele. At the meeting, Culpepper did not make any promises to take any corrective action. He merely acknowledged the existence of the problem and asked Wicks and Meyers as to any solutions which they would recommend.

In May, 1977, Forestpark was formally notified that Anrem would be managing the property. Anrem took a number of steps to address Forestpark's concerns regarding Popeye's patrons, including hiring security guards for the center. However, Forestpark wanted Anrem to evict Popeye's, which Anrem refused to do. Forestpark's restaurant never returned a profit and Forestpark was forced to close the facility in June 1978.

Forestpark refused to pay any further rent to Kimbell under its sublease, and Kimbell filed suit against it in September 1979. At some date, Forestpark joined Culpepper, American National and Anrem as third-party defendants. As against Culpepper, Forestpark alleged four causes of action: violation of the Deceptive Trade Practices Act, negligence, breach of implied warranty of suitability, and breach of an express warranty. As against Anrem, Forestpark alleged two causes of action: negligence and violation of the Deceptive Trade Practices Act.

American National filed a motion for summary judgment based on the statute of limitations, which the trial court granted. Forestpark appealed from that order, and in an unpublished opinion we affirmed the summary judgment for American National. Subsequently, Culpepper and Anrem also filed motions for summary judgment.

The trial court granted the motions for summary judgment in favor of Culpepper and Anrem. The court held that each of Forestpark's claims against Culpepper were barred by the statute of limitations and that Forestpark's claims against Culpepper for breach of implied warranty of fitness and for breach of express warranties or covenants did not exist with respect to the commercial sublease of real property at issue in the case. The court also denied Forestpark's claims against Anrem for negligence and violation of the Deceptive Trade Practices Act and held that Forestpark sought a measure of damages against Anrem which was not recognized under Texas law. In its sole point of error, Forestpark argues that the trial court erred in granting summary judgment for Culpepper and Anrem.

## CULPEPPER

Forestpark argues the trial court erred in granting summary judgment in favor of Culpepper. The grounds the court found to support the judgment were that: 1) each of Forestpark's causes of action against Culpepper were barred by the statute of limitations; 2) Culpepper did not violate an implied warranty of suitability; 3) Forestpark could not prove actionable negligence; and 4) Culpepper did not violate the Texas Deceptive Trade Practices Act.

In regard to its argument that its causes of action were not barred by the statute of limitations, Forestpark contends that it could not have reasonably discovered the wrongful acts by Culpepper prior to January 14, 1978. Forestpark contends that a four-year statute of limitations applied to its suit for violations of the Deceptive Trade Practices Act, and for breach of implied warranties and that the two-year statute of limitations applied to its negligence cause of action. Forestpark argues that it joined Culpepper and Anrem as third-party defendants on January 14, 1980. However, Forestpark does not cite a record reference and we cannot find one which shows when Forestpark *initially* joined Culpepper and Anrem as third-party defendants. The only third-party action brought by Forestpark in the record was filed on May 21, 1986 and titled "Fifth Amended Answer and Third Party Action of Forestpark Enterprices [sic]." Even if we accepted Forestpark's argument that it could not have reasonably discovered the wrongful acts of Culpepper until January 14, 1978 and that its causes of action were governed by the four-year statute of limitations, the only summary judgment evidence we have in the record of a third-party action by Forestpark was filed on May 21, 1986. Thus, Forestpark's suit against Culpepper was barred even if the four-year statute of limitations applied.

As Culpepper noted in his cross-point, Forestpark failed to bring forward in the record any of the pleadings or other documents on file which would reflect the date it first filed its claims against Culpepper. An appellant has the obligation to bring forward a record sufficient to show that the judgment below is erroneous. *See T.E. C. Electric Company v. Amfac Distribution Corp.*, 581 S.W.2d 508, 510–11 (Tex. Civ.App.—Tyler 1979, no writ). Further, in the absence of a complete record, the omitted documents are presumed to establish the propriety of the summary judgment rendered below. *See Bering v. Republic Bank of San Antonio*, 581 S.W.2d 806, 808 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.). Accordingly, we hold that the trial court did not err in granting Culpep-

per's motion for summary judgment against Forestpark on the grounds that Forestpark's suit was barred by the two-year or four-year statute of limitations. Because of our holding, we need not address Forestpark's other contentions that the trial court erred in granting summary judgment for Culpepper. *See McCraine v. Manz*, 730 S.W.2d 366, 367 (Tex.App.—Dallas 1987, no writ); *Liles v. Phillips*, 677 S.W.2d 802, 809 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). We overrule Forestpark's sole point of error as to Culpepper and sustain Culpepper's cross-point.

## ANREM

A different question confronts us in reviewing Forestpark's points of error against Anrem, as Anrem has not complained by cross-point of the deficiency in the record regarding when Forestpark filed its claims against Anrem. Forestpark complains that the trial court erred in granting summary judgment in Anrem's favor because: (1) Anrem breached its implied warranty of services; (2) Forestpark proved a correct recoverable measure of damages; (3) Forestpark proved actionable negligence; and (4) Forestpark proved that Anrem violated the DTPA.

First, Forestpark alleges that Anrem breached its implied warranty of services under the DTPA, TEX.BUS. & COM.CODE ANN. sec. 17.50(a)(2) (Vernon 1987). Specifically, Forestpark argues that Anrem represented, by undertaking management services for the strip center, that its services would be performed in a good and workmanlike manner. Forestpark states that Anrem provided a service, security and management, and that Anrem continually promised that it would solve the problems at Popeye's. Although Forestpark acknowledges that Anrem hired security guards to help prevent the "n'er-do-wells and ruffians" of Popeye's from harrassing the restaurant patrons, Forestpark claims that Anrem breached its implied warranty of services because it failed to evict Popeye's. Forestpark cites *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349 (Tex. 1987) in support of its argument. In *Melo-*

*dy Home,* the Supreme Court held that an implied warranty to repair or modify existing tangible goods or property in a good and workmanlike manner exist under section 17.50(a)(2) of the DTPA. However, the court expressly did not decide whether the warranty applied to services in which the essence of the transaction is the exercise of professional judgment by the service provider. *Id.* at 354.

Anrem argues that the implied warranty of services does not apply in the instant case because Anrem never sold anything to Forestpark. Anrem also contends there was no privity of contract because Forestpark's lease agreement was with Kimbell, and thus any action for breach of warranty could only have been brought against Kimbell, not against Anrem. We disagree.

■ Although the DTPA's definition of "consumer" includes one who "acquires by purchase or lease," it does not necessarily follow that the consumer must himself be the one who purchases or leases. *Kennedy v. Sale,* 689 S.W.2d 890, 892 (Tex.1985). Moreover, privity of contract is not required for an action under the DTPA. *Flenniken v. Longview Bank & Trust Co.,* 661 S.W.2d 705, 707 (Tex.1983). We find that Forestpark was a consumer under the DTPA.

■ We next must determine whether the implied warranty enunciated in *Melody Home* extends to Anrem regarding whether Anrem was providing repair or modification services of existing tangible goods or property to Forestpark. The only tangible property which Forestpark possessed was a lease-hold interest in the strip center. Anrem never sought to repair or modify that lease-hold interest. Anrem's duty as property manager was to manage the shopping center. Anrem's services involved the exercise of professional judgment by the service provider. The very action which Forestpark maintains Anrem should have taken—the eviction of another tenant (Popeye's) in the center, who was a tenant prior to Forestpark and whose lease was still in effect—clearly shows that the exercise of professional judgment was required by Anrem. The new implied warranty of services created by the Supreme Court's decision in *Melody Home* does not extend to the services provided by Anrem. The Supreme Court expressly refused to decide the question of whether an implied warranty applies to services in which the essence of the transaction is the exercise of professional judgment by the service provider. *See Melody Home,* 741 S.W.2d at 354. Therefore, the Supreme Court's prior opinion in *Dennis v. Allison,* 698 S.W.2d 94, 95–96 (Tex.1985), indicating that no such implied warranty exists, remains as the most recent controlling authority. Thus, we hold as a matter of law that Anrem did not breach an implied warranty of services since it involved the exercise of professional judgment by the service provider and that Anrem was not seeking to repair or modify an existing tangible good or property.

Second, Forestpark contends that the trial court erred in rendering summary judgment on the grounds that Forestpark could not prove Anrem was negligent in the performance of its duties as a property manager. Forestpark argues that Anrem, as the owner's agent, had the duty to use reasonable and available methods to stop the activities at Popeye's and that Anrem breached this duty. In its third-party petition Forestpark alleged that Anrem's negligence consisted of the following acts: (1) failure to reasonably act to prevent or abate the activities at "Popeye's;" (2) failure to enforce lease covenants as a reasonable manager would; and (3) failure to terminate the lease of "Popeye's" when a reasonable manager would have done so.

■ In a negligence cause of action, the plaintiff must prove three elements: (1) a legal duty owed by one person to another; (2) breach of that duty; and (3) damages to the party to whom the duty was owed proximately caused by the breach of the duty. *Lucas v. Texas Industries, Inc.,* 696 S.W.2d 372, 376–77 (Tex.1984). Regarding Forestpark's contention that Anrem failed to enforce the lease covenants, Anrem owed no contractual duty to Forestpark because there was no privity of contract between Forestpark, a sublessee, and An-

rem, the management agent of the lessor. Forestpark was a tenant under a sublease agreement with Kimbell. Anrem's contractual duty was one owed to the lessor, American National, to manage the property. *Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555, 558 (Tex.1961); *Parr v. Farmers State Bank of Orange Grove*, 659 S.W.2d 883, 884 (Tex.App.—San Antonio 1983, no writ). A sublessee can not recover from a lessor for breach of a lease covenant or any other duty arising out of the lease agreement. *Houck v. Kroger Co.*, 555 S.W.2d 803, 806 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.).

■ We next must determine whether there was a material issue of fact as to whether Anrem failed to reasonably act to prevent or abate the activities at Popeye's or should have terminated Popeye's lease. An operator of a business has a duty to take reasonable precautions to ensure that his business premises are reasonably safe for the operator's invitees and the general public. *Allright Inc. v. Pearson*, 711 S.W.2d 686, 690 (Tex.App.—Houston [1st Dist.] 1986); *modified on other grounds*, 735 S.W.2d 240 (Tex.1987). However, Forestpark makes no allegations and does not seek personal injuries which were caused to its agents or representatives, nor does it seek damages for any physical property damage. Instead it seeks to recover its operational losses, those losses were incurred in day-to-day operations because its business proved to be unprofitable.

We find that Anrem reasonably acted to prevent the activity at Popeye's. Anrem hired security guards for the center, asked the police department to increase its patrol of the strip center, replaced the parking lights in the shopping center, and towed off illegally parked cars. We do not find that Anrem's duty to take reasonable precautions to ensure the safety of the general public included evicting Popeye's, and thus facing a suit for wrongful cancellation of the lease by Popeye's. We hold that there is no material issue of fact that Anrem was negligent in insuring the safety of the general public in the shopping center.

■ Third, we must address whether the trial court erred in granting summary judgment for Anrem on the grounds that Anrem did not engage in deceptive trade practices. Forestpark asserts that Anrem represented to it that the harassment and vandalism from Popeye's patrons would be stopped. Forestpark's only summary judgment evidence of the misrepresentations is contained in the affidavit of James A. Myers. In his affidavit, Myers stated:

Forestpark was assured by Anrem representatives, such as Charles Golden, that the harassment and vandalism would be stopped by Anrem.

The harassment, vandalism, and general disturbance did not cease, and affected Hayloft business up to its eventual closing in 1978. The closing was caused solely because of the harassment, vandalism, and general disturbance associated with Popeye's.

Had anyone at Forestpark known that Anrem would not act as a prudent manager, or would make representations to stop the harassment, vandalism, and general disturbances, which turned out to be false, it would have never opened the Hayloft at Pasadena. Further, the representations of Anrem caused Forestpark to continue its operation beyond May of 1977 because Forestpark did not know or realize that Culpepper and Anrem had mislead Forestpark at that time. Had Forestpark known in May, 1977 that Culpepper and Anrem would not fulfill their promises with regard to the clientele of Popeye's, it would have ceased operations in order to avoid incurring any additional expenses or losses.

In *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984), the Supreme Court held that legal conclusions contained in affidavits are insufficient to raise a question of fact to prevent a summary judgment. In order to constitute proper summary judgment evidence an affidavit must specify specific factual matters such as the time, place, declarant and exact nature of the misrepresentation. *Id.* at 112.

In the instant case in order to constitute summary judgment evidence, Forestpark must have come forward with evidence

stating a specific time, place, maker and exact nature of the alleged misrepresentations made by Anrem. We find that Myers' affidavit is wholly conclusory regarding the misrepresentations of Anrem and constitutes insufficient summary judgment evidence to raise a question of fact regarding Anrem's misrepresentations. Therefore, we hold that the trial court's summary judgment on the issue of misrepresentation was correct.

Fourth, Forestpark contends that the trial court erred in granting summary judgment on the grounds that Forestpark could not prove recoverable damages. The trial court found that Forestpark sought to recover only operational losses suffered by it as damages against Anrem. The court found that this was an improper and impermissible remedy as a measure of recovery under the causes of action asserted by Forestpark against Anrem. We need not address whether the trial court was correct in granting summary judgment on the issue that Forestpark could not, as a matter of law, prove recoverable damages as we have held that the trial court was correct in rendering judgment for Anrem on all the causes of actions asserted by Forestpark against Anrem.

We overrule Forestpark's sole point of error. We affirm.